TERRY ANN WILLIAMS *v.* COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES ET AL.
(SC 16249)

Borden, Norcott, Palmer, Zarella and Hodgson, Js.

Argued February 16—officially released August 7, 2001

*Charles Krich*, with whom was *Philip A. Murphy, Jr.*, for the appellant (named defendant).

*Philip L. Steele*, for the appellee (plaintiff).

*Kevin D. O'Leary*, with whom, on the brief, was *Fiona Greaves*, for the appellee (defendant Fleet National Bank of Connecticut).

*Kathleen Eldergill* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

*Robert B. Mitchell*, *Lisa M. Grasso* and *David J. Kelly* filed a brief for the Connecticut Business and Industry Association as amicus curiae.

*Opinion*

BORDEN, J. The principal issue in this certified appeal is whether the 180 day time requirement for filing a complaint with the named defendant commission on human rights and opportunities (commission) pursuant

to General Statutes § 46a-82 (e)[1] is subject matter juris-
dictional. Following our grant of certification to appeal,[2]
the commission[3] appeals from the judgment of the
Appellate Court, which affirmed the judgment of the
trial court dismissing the disability discrimination com-
plaint filed by the plaintiff, Terry Ann Williams. The

[1] General Statutes § 46a-82 provides: "(a) Any person claiming to be
aggrieved by an alleged discriminatory practice, except for an alleged viola-
tion of section 46a-68, may, by himself or his attorney, make, sign and file
with the commission a complaint in writing under oath, which shall state
the name and address of the person alleged to have committed the discrimi-
natory practice, and which shall set forth the particulars thereof and contain
such other information as may be required by the commission. After the
filing of a complaint pursuant to this subsection, the commission shall serve
upon the person claiming to be aggrieved a notice that: (1) Acknowledges
receipt of the complaint and (2) advises of the time frames and choice of
forums available under this chapter.

"(b) The commission, whenever it has reason to believe that any person
has been engaged or is engaged in a discriminatory practice, may issue a
complaint except for a violation of subsection (a) of section 46a-80.

"(c) The commission may issue a complaint if: (1) An affirmative action
plan filed pursuant to section 46a-68 is in violation of any of the provisions
of section 4-61u or 4-61w, sections 46a-54 to 46a-64, inclusive, section 46a-
64c or sections 46a-70 to 46a-78, inclusive; or (2) an agency, department,
board or commission fails to submit an affirmative action plan required
under section 46a-68.

"(d) Any employer whose employees, or any of them, refuse or threaten
to refuse to comply with the provisions of section 46a-60 or 46a-81c, may
file with the commission a written complaint under oath asking for assistance
by conciliation or other remedial action.

"(e) Any complaint filed pursuant to this section must be filed within one
hundred and eighty days after the alleged act of discrimination except
that any complaint by a person claiming to be aggrieved by a violation of
subsection (a) of section 46a-80 must be filed within thirty days of the
alleged act of discrimination."

[2] This court granted the commission's request for certification to appeal
limited to the following issue: "Did the Appellate Court improperly conclude
that the 180 day time limitation for filing a complaint under General Statutes
§ 46a-82 (e) was subject matter jurisdictional?" *Williams* v. *Commission
on Human Rights & Opportunities*, 252 Conn. 930, 746 A.2d 794 (2000).

[3] Fleet National Bank of Connecticut (Fleet Bank) is also a defendant in
this case. At the time of the complaint, the plaintiff was employed by Shaw-
mut Mortgage Company, a subsidiary of Shawmut National Corporation,
which was also the corporate parent of Shawmut Bank Connecticut, N.A.
Shawmut National Corporation subsequently was acquired by Fleet Bank.

Appellate Court determined that because the plaintiff had not filed her complaint within 180 days of the alleged act of discrimination, the commission lacked jurisdiction to entertain the complaint. *Williams* v. *Commission on Human Rights & Opportunities*, 54 Conn. App. 251, 258, 733 A.2d 902 (1999). The commission claims that the 180 day filing period is not subject matter jurisdictional, but rather, is subject to waiver and equitable tolling. We agree with the commission that the filing period is not jurisdictional. Accordingly, we reverse the judgment of the Appellate Court.

The plaintiff brought the underlying complaint against her former employer, Shawmut Mortgage Company (Shawmut). The complaint was assigned to a commission investigator and was dismissed for lack of reasonable cause. The plaintiff appealed from the commission's order of dismissal to the trial court. The court, *Maloney, J.,* rendered a stipulated judgment and remanded the matter back to the commission. On remand, the commission dismissed the complaint on timeliness grounds. The plaintiff again appealed to the trial court. The trial court, *McWeeny, J.,* dismissed the plaintiff's appeal, thus affirming the commission's dismissal of the complaint. The plaintiff then appealed from the trial court's judgment to the Appellate Court. Although the commission did not claim, in either the trial court or the Appellate Court, that the 180 day time limit was jurisdictional, the Appellate Court affirmed the trial court's judgment on the ground that the time limit was subject matter jurisdictional. Id. This appeal followed.

The following facts and procedural history, as stated by the Appellate Court, are relevant to the disposition of this appeal. "The plaintiff's complaint to the commission, dated February 10, 1994, was filed with the commission on February 14, 1994, and alleged that the plaintiff was employed by Shawmut from October, 1979,

until January 29, 1991. She was given a written warning about her work by Shawmut on January 28, 1991, worked January 29, 1991, called in sick on January 30, 1991, and never returned to work thereafter. The plaintiff filed a workers' compensation claim alleging work-related stress, which she claimed commenced on January 28, 1991. She also claimed disability benefits, alleging a disablement beginning January 29, 1991. After she stopped working, Shawmut advised her on March 22, 1991, that her job had been filled and that she had been replaced. On April 15, 1991, the plaintiff refused an offer of another position at the bank at her former pay rate. She continued to receive a full salary until May 21, 1991. The plaintiff's disability payments ceased on January 30, 1993. The plaintiff began employment with another employer, Colt Firearms, on January 4, 1993. She settled her workers' compensation claim against Shawmut on July 7, 1993 . . . . The plaintiff received a letter from Shawmut on August 3, 1993, advising her of her federal rights to continue health insurance coverage. The letter noted that her termination of employment date was January 23, 1993. On October 15, 1993, the plaintiff wrote to Shawmut requesting that she be allowed to return to work. Shawmut, by letter dated December 17, 1993, indicated that more time was needed to respond to her request and agreed not to assert a 'time based or defense of statute of limitations which might arise after your initial claim letter.'

"The trial court concluded that the employer's agreement as expressed in its letter of December 17, 1993, did not prevent the commission from conducting a review of the timeliness of the plaintiff's complaint and that the doctrine of equitable tolling of the statute should not be invoked to save the plaintiff's complaint from dismissal. Accordingly, the trial court dismissed the plaintiff's appeal.

"The plaintiff sought an articulation, claiming that the trial court had not determined the issues presented to it. The court articulated its memorandum of decision, and stated that it did not decide whether the 180 day limitation of § 46a-82 (e) was jurisdictional because even if it assumed the time limitation was not jurisdictional and, therefore, subject to the application of the doctrine of equitable tolling, that doctrine should not be invoked on the facts. The court further stated that the timeliness of the claim is not supported by the record, that the plaintiff's claim that she remained an employee of Shawmut from January, 1991, through October, 1993, is not supported by the evidence, and that the commission, on the substantial evidence presented, correctly determined that the plaintiff was not an employee in October of 1993 when she attempted to file a claim to return to work at Shawmut." Id., 252–54.

On appeal to the Appellate Court, the plaintiff argued that "even if her complaint were filed untimely, the commission did not lose jurisdiction and her claim could still be considered because the limitations period should be tolled on equitable grounds, or because Shawmut had waived the defense of the statute of limitations or is estopped from raising it." Id., 254. Without reaching the plaintiff's claims, however, the Appellate Court determined that the time limitation of § 46a-82 (e) was subject matter jurisdictional and, therefore, not waivable or subject to equitable tolling. Id. The court, relying on *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 674 A.2d 1300 (1996), determined that § 46a-82 (e) was a mandatory time limitation that deprived the commission of jurisdiction. *Williams* v. *Commission on Human Rights & Opportunities*, supra, 54 Conn. App. 255–56.

The commission filed a motion to reargue or for reargument en banc. According to the commission, the

Appellate Court had decided an issue that had not been raised in the trial court or briefed by the parties, even though the commission had requested time to brief the jurisdictional issue. The Appellate Court denied the commission's motion. The commission then petitioned this court for certification to appeal from the Appellate Court's judgment, which we granted. See footnote 2 of this opinion. We agree with the commission that the 180 day time requirement for filing a discrimination petition pursuant to § 46a-82 (e) is not jurisdictional but, rather, is subject to waiver and equitable tolling.[4]

I

We first address a procedural issue raised by Fleet Bank. Fleet Bank claims that the commission does not have standing to bring this appeal because the commission prevailed at the Appellate Court and, therefore, is not aggrieved. "Because '[t]he issue of standing implicates this court's subject matter jurisdiction,' we address it first." *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction

[4] We briefly address the Appellate Court's authority to have considered the jurisdictional issue. "It is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time." *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698, 620 A.2d 780 (1993). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . . If at any point, it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed." (Citations omitted; internal quotation marks omitted.) Id., 698–99. At the same time, however, prudent appellate jurisprudence normally counsels against a court sua sponte raising a dispositive claim without affording the parties the opportunity to brief the issue. See, e.g., *Sheff* v. *O'Neill*, 238 Conn. 1, 87–88, 678 A.2d 1267 (1996) (*Borden, J.*, dissenting).

of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Sadloski* v. *Manchester*, 228 Conn. 79, 84, 634 A.2d 888 (1993).

An agency has an institutional interest in decisions that affect its decision-making ability. See *Board of Pardons* v. *Freedom of Information Commission*, 210 Conn. 646, 650, 556 A.2d 1020 (1989) ("the board has a legitimate institutional interest in the integrity of its decision-making process"). We previously have held, moreover, that impairment of an agency's ability to carry out its responsibilities constitutes aggrievement for purposes of appeal. See *Milford* v. *Local 1566*, 200 Conn. 91, 98, 510 A.2d 177 (1986) ("The court's ruling . . . clearly undermines the integrity of the administrative procedure employed by the board and calls into question the validity of most of the decisions it has rendered. The ruling therefore directly interferes with the discharge of the board's statutory responsibilities and the board, as a result, has sufficient interest in the controversy to confer standing.").

We conclude that the Appellate Court's decision that § 46a-82 (e) was a subject matter jurisdictional bar to the commission's ability to entertain untimely discrimination complaints constituted aggrievement. The Appellate Court's decision impaired the integrity of the commission's decision-making process and its ability

to carry out its responsibilities. As the commission informed this court at oral argument, it routinely entertains untimely complaints when the parties present adequate reasons for the delay. The commission, charged with protecting the public interest as well as individual complainants, has determined that in appropriate circumstances entertaining untimely complaints serves those interests.

## II

Before addressing the principal issue in dispute in this case, namely, whether the 180 day filing requirement of § 46a-82 (e) is subject matter jurisdictional, we take this opportunity to clarify the analysis for deciding whether a time limit is subject matter jurisdictional. A conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances; e.g., *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 103–104, 616 A.2d 793 (1992) (recognizing limits to notion that subject matter jurisdictional defects may be raised at any time); a subject matter jurisdictional defect may not be waived; *State* v. *Anonymous*, 240 Conn. 708, 718, 694 A.2d 766 (1997); may be raised at any time, even on appeal; *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698, 620 A.2d 780 (1993); and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly. *Hayes* v. *Beresford*, 184 Conn. 558, 562, 440 A.2d 224 (1981) ("[i]t is hornbook law that the parties cannot confer subject matter jurisdiction on a court by consent, waiver, silence or agreement"). Therefore, we have stated many times that there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional. See *Banks* v. *Thomas*, 241 Conn. 569, 582–83, 698 A.2d 268 (1997).

We have found, through a review of cases in this court that have dealt with jurisdiction in recent years, inconsistent approaches in determining whether a time limitation is jurisdictional. One line of cases has focused on whether the legislature intended the time limitation to be subject matter jurisdictional, and a second line of cases has focused on whether the statutory provision is mandatory or directory. We conclude that the first line of cases provides the proper analytical approach to this issue.

In the first line of cases, this court has stated: "The question of whether a statutory time limitation is subject matter jurisdictional is a question of statutory interpretation. . . . Thus, we look to whether the legislature intended the time limitation to be jurisdictional. The legislative intent is to be discerned by reference to the language of the statute, its legislative history and surrounding circumstances, the policy the limitation was designed to implement, and the statute's relationship to the existing legislation and common law principles governing the same subject matter. . . . In light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Citations omitted; internal quotation marks omitted.) Id.; see also *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 145–46, 712 A.2d 947 (1998); *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 695, 699 A.2d 1003 (1997); *HUD/Barbour-Waverly* v. *Wilson*, 235 Conn. 650, 655–56, 668 A.2d 1309 (1995); *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 163, 659 A.2d 138 (1995); *Simms* v. *Warden*, 230 Conn. 608, 614–15, 646 A.2d 126 (1994); *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 854, 633 A.2d 305 (1993); *Ambroise* v. *William Raveis Real Estate, Inc.*,

226 Conn. 757, 764, 628 A.2d 1303 (1993); *Lauer* v. *Zoning Commission*, 220 Conn. 455, 463, 600 A.2d 310 (1991); *LeConche* v. *Elligers*, 215 Conn. 701, 715, 579 A.2d 1 (1990).

In comparison, a second line of cases has dealt with subject matter jurisdiction by analyzing whether the statutory limitation in question was mandatory or directory. "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 680–81, 694 A.2d 1218 (1997).

This second line of cases itself breaks down into two categories. One category of cases has confused the concepts of mandatory language and subject matter jurisdiction. In these cases, the court, in discerning the intent of the legislature, at times has *equated* the intent of the legislature to create a mandatory limitation with the intent to create a subject matter jurisdictional limit. See, e.g., *Doe* v. *Statewide Grievance Committee*, supra, 240 Conn. 683 ("we are inclined . . . to reject the plaintiff's invitation to interpret [the statute] as mandatory in nature and as establishing a jurisdictional constraint"); *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 700 ("[t]he commission's second contention, that its failure to comply with these time limits does not divest it of jurisdiction, depends exclusively on its argument that those

limitations are directory and not mandatory"); see also id., 700 n.13.

The second category of cases has *separated* the concepts of mandatory language and subject matter jurisdiction. These cases have held that if a time limitation imposes a mandatory obligation, it must be fulfilled absent some action by the parties constituting either consent or waiver. See, e.g., *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, supra, 233 Conn. 173 ("the time limitation . . . is more properly considered to be mandatory, which means that it must be complied with absent waiver or consent by the parties, rather than subject matter jurisdictional, which would preclude any extension of time even by express waiver or consent"); *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 241–42, 558 A.2d 986 (1989), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992) ("[t]here is no dispute that the subcommittee failed to render its proposed decision within the mandatory time constraints . . . [but] the trial court's jurisdiction was not affected by the delay"). Thus, these cases implicitly hold that a conclusion that a time limit is mandatory does not necessarily mean that it is also subject matter jurisdictional, because the notions of waiver and consent are fundamentally inconsistent with the notion of subject matter jurisdiction.

We think that the reasoning in this second category of cases is persuasive, and is in accord with this court's pronouncement that "[i]n light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Internal quotation marks omitted.) *Banks* v. *Thomas*, supra, 241 Conn. 583. Although we acknowledge that mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not over-

come the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar. In the absence of such a showing, mandatory time limitations must be complied with absent an equitable reason for excusing compliance, including waiver or consent by the parties. Such time limitations do not, however, implicate the subject matter jurisdiction of the agency or the court. With this framework in mind, we turn to the 180 day filing requirement of § 46a-82 (e).

Whether the filing requirement of § 46a-82 (e) implicates the *commission's subject matter jurisdiction is* a question of statutory interpretation. "[T]he proper analysis of a statutory time limitation on the right to appeal devolves into a question of statutory construction: did the legislature, in imposing the time limitation, intend to impose a subject matter jurisdictional requirement . . . ? We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 226 Conn. 764.

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." *HUD/ Barbour-Waverly* v. *Wilson*, supra, 235 Conn. 656. Section 46a-82 (e) provides in relevant part: "Any complaint filed pursuant to this section *must be filed* within one hundred and eighty days after the alleged act of discrimination . . . ." (Emphasis added.) As we have often

stated, "[d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature. *State* v. *Metz*, 230 Conn. 400, 410, 645 A.2d 965 (1994); *Lo Sacco* v. *Young*, 210 Conn. 503, 507, 555 A.2d 986 (1989) . . . ." (Internal quotation marks omitted.) *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000). We acknowledge that the strong mandatory language of § 46a-82 (e), namely, "must be filed," is consistent with the notion of a subject matter jurisdictional limit. Other considerations persuade us to the contrary, however, that the 180 day time limit, although mandatory in nature, is not also subject matter jurisdictional.

First, in interpreting the 180 day time limit to file a discrimination complaint under § 46a-82, we do not write on a clean slate. Section 46a-82 (e) comes to us at this point in our jurisprudence with a well established judicial gloss. See, e.g., *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities*, 165 Conn. 318, 334 A.2d 443 (1973); *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 559 A.2d 1120 (1989). These cases establish that the filing requirement of § 46a-82 (e), formerly General Statutes § 31-127,[5] was not intended as a subject matter jurisdictional bar.

---

[5] General Statutes (1947 Sup.) § 1365i, which was renumbered as General Statutes (1958 Rev.) § 31-127, and subsequently transferred to § 46a-82, provided: "Any person claiming to be aggrieved by an alleged unfair employment practice may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unfair employment practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. The commission, whenever it has reason to believe that any person has been engaged or is engaging in an unfair employment practice may issue a complaint. Any employer whose employees, or any of them, refuse or threaten to refuse to comply with the provisions of sections 1360i to 1366i, inclusive, may file with the commission a written complaint under oath asking for assistance by conciliation or other remedial action. After the filing of any complaint, the chairman of the commission shall refer the same to a commissioner or investigator to make prompt preliminary investigation of such complaint, and, if such commissioner or investigator determines after such preliminary investigation that there is

In *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities*, supra, 165 Conn. 319, a female employee filed a complaint with the commission alleg-

reasonable cause for believing that an unfair employment practice has been or is being committed as alleged in such complaint, he shall immediately endeavor to eliminate the unfair employment practice complained of by conference, conciliation and persuasion. No commissioner or investigator shall disclose what has occurred in the course of such endeavors, provided the commission may publish the facts in the case of any complaint which has been dismissed and the terms of conciliation when a complaint has been adjusted. In case of failure to eliminate such practice, the investigator or investigating commissioner shall certify the complaint and the results of his investigation to the chairman of the inter-racial commission and to the attorney general. The chairman of the inter-racial commission shall thereupon appoint a hearing tribunal of three persons who shall be members of the commission or panel of hearing examiners to hear such complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of such complaint, as the same may have been amended, requiring the person, employer, labor organization or employment agency named in such complaint, hereinafter referred to as the respondent, to answer the charges of such complaint at a hearing before such tribunal, at a time and place to be specified in such notice. The place of any such hearing may be the office of the commission or another place designated by it. The case in support of the complaint shall be presented at the hearing by the attorney general who shall be counsel for the commission; and no commissioner who previously made the investigation or caused the notice to be issued shall participate in the hearing except as a witness, nor shall he participate in the deliberations of the tribunal in such case. Any endeavors or negotiations for conciliation shall not be received in evidence. The respondent may file a written answer to the complaint and appear at such hearing in person or otherwise, with or without counsel, and submit testimony and be fully heard. The tribunal conducting any hearing may permit reasonable amendment to any complaint or answer and the testimony taken at each hearing shall be under oath and be transcribed at the request of any party. If, upon all the evidence, the tribunal finds that a respondent has engaged in any unfair employment practice as defined in section 1364i, it shall state its findings of fact and shall issue and file with the commission and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice. If, upon all the evidence, the tribunal finds that the respondent has not engaged in any alleged unfair employment practice, it shall state its findings of fact and shall similarly issue and file an order dismissing the complaint. The commission shall establish rules of practice to govern, expedite and effectuate the foregoing procedure. Any complaint filed pursuant to this section must be so filed within six months after the alleged act of discrimination."

ing that she was paid less than her male counterparts for doing the same work in the same department. The commission ordered the employer to cease and desist from maintaining all discriminatory classifications, and to pay the complainant the difference in the compensation that it had paid its male and female employees in that department, retroactive to October 1, 1967, the effective date of the inclusion of sex discrimination in General Statutes (1969 Sup.) § 31-126. Id., 323. The employer appealed this decision to the Superior Court. Id. By stipulation of the parties, the matter was referred to a state referee, who, acting as a court on the record certified by the commission, rendered judgment modifying the commission's decision and ordered, inter alia, that the complainant receive back pay retroactive to January 22, 1969.[6] Id., 324. The commission then appealed to this court. Id.

This court, in reversing the judgment in part, limited the period of recovery of back pay to ninety days prior to the filing of the complaint. Id., 331. We stated: "[T]he clear import of § 31-127 is to furnish redress for an act of discrimination which has been complained of within ninety days of the date on which it is alleged to have occurred . . . . By limiting the time of redress to the act of discrimination which occurred within ninety days of the complaint, the incentive for bringing . . . spurious actions is substantially reduced, and we think this was the intent of the legislature in establishing the ninety-day limit." (Internal quotation marks omitted.) Id., 330–31.

In support of the conclusion that the intent of the legislature was to limit the period of back pay available to a complainant to ninety days, this court reviewed the legislative history of the filing requirement. The

---

[6] There is nothing in *Veeder-Root Co.* indicating why the state referee ordered the employer to pay the complainant back pay retroactive to January 22, 1969.

court discussed Public Acts 1959, No. 334, which had changed the filing requirement from six months to ninety days due to the commission's then new powers to order reinstatement and back pay, and the legislature's concern that "[i]f the period for filing the complaint is allowed to be too long, a substantial amount of back pay can build up, and it seems intelligent to narrow that period for filing down as much as possible." (Internal quotation marks omitted.) Id., 332. Thus, we stated: "There can be no doubt that the legislature intended the ninety-day limitation to serve as a bar to recovery of back pay beyond ninety days prior to the complaint." Id. Although an inference of subject matter jurisdictional intent *might* be drawn from this legislative history and judicial interpretation, subsequent legislative action and judicial interpretations are inconsistent with such an inference.

In 1974, the legislature again amended the filing requirement, expanding it from ninety days to 180 days; see Public Acts 1974, No. 74-54; in order to deal with the prevalence of complainants missing the ninety day filing deadline, and to bring state law into accord with federal law. See Conn. Joint Standing Committee Hearings, Commission on Human Rights and Opportunities, 1974 Sess., p. 4, remarks of Arthur L. Green, director of the state commission on human rights and opportunities. One year later, the legislature enacted Public Acts 1975, No. 75-27, which, while retaining the 180 day filing requirement, expanded the amount of time for which back pay could be awarded as a remedy for an unfair employment practice to two years. Public Act 75-27 is now codified at General Statutes § 46a-86 (b).[7]

---

[7] General Statutes § 46a-86 (b) provides in relevant part: "In addition to any other action taken hereunder, upon a finding of a discriminatory employment practice, the presiding officer may order the hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, provided, liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of the complaint . . . ."

The purpose of this legislative expansion of the *remedial* period to two years was to bring state law into accord with federal law. As Representative Margaret E. Morton stated: "While § 31-127 . . . sets out no limitation on the time for which back pay can be awarded as a remedy in employment discrimination, a Connecticut Supreme Court decision, [*Veeder-Root Co.*], interpreted Connecticut law as limiting the award to ninety days prior to filing a complaint. This was relying on 1959 legislative intent. This renders the Connecticut remedy inferior to the federal which provides for back pay remedy up to two years. . . . The 1974 [G]eneral [A]ssembly increased the period for filing complaints with the [c]ommission from ninety to one hundred eighty days after the alleged act of discrimination, which reflected its concern for consistency with the federal legislation and presumably extended that back pay to one hundred eighty days." 18 H.R. Proc., Pt., 2, 1975 Sess., pp. 908–909.

Therefore, from 1975 forward, including the present, although the statutory scheme requires that the complaint be filed within 180 days from the last date of discrimination, the same statutory scheme permits the agency to award back pay for a period of up to two years. This bifurcation of the filing period and the permissible remedial period is inconsistent with the notion that the 180 day time limit for filing is subject matter jurisdictional, because it is unlikely that the legislature would have intended to place a subject matter jurisdictional time limitation on the filing of the claim that was different from and substantially shorter than the permissible remedial period for the same claim.

In 1989, this court again was faced with the issue of the jurisdiction of the commission to entertain an untimely filed complaint. In *State* v. *Commission on Human Rights & Opportunities*, supra, 211 Conn. 465, the plaintiffs, the state and the state teachers retirement

board, appealed to the trial court from a decision by the commission awarding a retired teacher an increase in his retirement benefits based on the board's use of gender-based tables to calculate retirement benefits. The plaintiffs claimed that the teacher's complaint was untimely under General Statutes (Rev. to 1975) § 31-127 because he had failed to file it with the commission within 180 days of the alleged act of discrimination. Id., 468. The trial court agreed with the commission that, because "each pension check [the teacher] received constituted a 'new act of discrimination' under General Statutes (Rev. to 1975) § 31-126 (a), [the teacher's] complaint was not untimely." Id. We affirmed this part of the decision. Id., 476.

We stated: "The plaintiffs' first claim of error is largely controlled by our decision in *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities,* [supra, 165 Conn. 318]. In that case, we addressed the limitation period of General Statutes (1969 Sup.) § 31-127, which at that time was ninety days. . . . [W]e held that the complainant was entitled to back pay dating from ninety days prior to the filing of her complaint . . . . *Veeder-Root Co.* therefore established that *the limitation period of . . . § 31-127 acted as a limitation on the remedy rather than a limitation on the time one can bring a cause of action.* Thus, under . . . § 31-127, the maximum period for which one can recover for past acts of discrimination is 180 days preceding the filing of the complaint.[8] Naturally, where the only past discriminatory act within the limitation period occurred less than 180 days before the complaint, the period of recovery is shortened to the time following the date that act occurred." (Citations omitted; emphasis altered; internal quotation marks omitted.) *State* v.

---

[8] Apparently, it was not brought to the court's attention that the remedial period had been increased to two years.

*Commission on Human Rights & Opportunities*, supra, 211 Conn. 471–72.

The court also discussed the concept of equitable tolling. "While the rationale of *Veeder-Root Co.* . . . disposes of the plaintiffs' first claim, we note here that the principle of the 'equitable tolling' of limitations periods based on an employer's continuing acts of discrimination is well established in the federal courts. See, e.g., *Wingfield* v. *United Technologies Corporation*, 678 F. Sup. 973, 979 (D. Conn. 1988) (tolling of period in federal age discrimination action). The federal courts have expressly recognized the applicability of equitable tolling in Title VII sex discrimination employment cases. *DiMaggio* v. *United States Postal Service*, 643 F. Sup. 1, 7 (D. Conn. 1984)." *State* v. *Commission on Human Rights & Opportunities*, supra, 211 Conn. 475.

The reasoning of *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities*, supra, 165 Conn. 318, and *State* v. *Commission on Human Rights & Opportunities*, supra, 211 Conn. 464, is inconsistent with reading the 180 day limit to file a discrimination complaint under § 46a-82 (e) as subject matter jurisdictional. *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities*, supra, 334, indicated that the 180 day filing requirement was a bar to recovery of back pay, and did not suggest a limit on the commission's jurisdiction. *State* v. *Commission on Human Rights & Opportunities*, supra, 475, viewed the 180 day time limit as embodying the notion of equitable tolling, which is inconsistent with the concept of subject matter jurisdiction. There is nothing in the legislative history of § 46a-82 (e), moreover, that overcomes the strong presumption of subject matter jurisdiction. We have found nothing in the legislative history surrounding the changes in the filing requirement from six months, to ninety days, and then back to six months, that supports an interpretation that the legislature regarded the filing

requirement as jurisdictional in nature. There is no indication that the legislature intended to deprive the commission of the authority to entertain untimely discrimination complaints, much less a "strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Internal quotation marks omitted.) *Banks* v. *Thomas*, supra, 241 Conn. 583. In the absence of such a showing, we conclude that the legislature did not intend the filing requirement to be jurisdictional.

Federal antidiscrimination case law provides further support for our conclusion. "We have often looked to federal employment discrimination law for guidance in enforcing our own anti-discrimination statute." *Dept. of Health Services* v. *Commission on Human Rights & Opportunities*, 198 Conn. 479, 489, 503 A.2d 1151 (1986); see also *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 108, 653 A.2d 782 (1995); *State* v. *Commission on Human Rights & Opportunities*, supra, 211 Conn. 469–70. The United States Supreme Court has held that "filing a timely charge of discrimination with the [Equal Employment Opportunity Commission] is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234, reh. denied, 456 U.S. 940, 102 S. Ct. 2001, 72 L. Ed. 2d 461 (1982).

Interpreting the provision as a statute of limitations subject to waiver and equitable tolling, moreover, honors the remedial purpose of § 46a-82 to allow injured parties to bring employment discrimination complaints, while still giving adequate notice to employers. See, e.g., *International Brotherhood* v. *Commission on Civil Rights*, 140 Conn. 537, 545, 102 A.2d 366 (1953) (labor union estopped from claiming that discrimina-

tory act occurred before April 1, 1950, because of its own policies and misrepresentations).

Fleet Bank claims, in accord with the analysis of the Appellate Court in the present case, that our reasoning in *Angelsea Productions, Inc.*, compels the conclusion that the 180 day time limit of § 46a-82 (e) is a jurisdictional bar. In our view, however, that case is distinguishable.

In *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 683, this court determined that the time limits of General Statutes (Rev. to 1993) §§ 46a-83 (b)[9] and 46a-84 (b),[10] which dealt with time limits the commission had to

[9] General Statutes (Rev. to 1993) § 46a-83 (b) provided: "Before issuing a finding of reasonable cause or no reasonable cause, the investigator shall afford each party and his representative an opportunity to provide written or oral comments on all evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes. The investigator shall consider such comments in making his determination. The investigator shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it is based not later than nine months from the date of filing of the complaint, except that for good cause shown, the executive director or his designee may grant a single extension of the investigation of three months. If the investigator makes a determination that there is reasonable cause to believe that a violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days from receipt of notice of the reasonable cause finding to elect a civil action in lieu of an administrative hearing pursuant to section 46a-84. If either the complainant or the respondent requests a civil action, the commission, through the attorney general or the commission counsel, shall commence an action pursuant to subsection (b) of section 46a-89 within forty-five days of receipt of the complainant's or the respondent's notice of election of a civil action."

[10] General Statutes (Rev. to 1993) § 46a-84 (b) provided: "Upon certification of the complaint, the executive director of the commission or his designee shall appoint a hearing officer to act as a presiding officer to hear the complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of the complaint, as the same may have been amended, requiring the respondent to answer the charges of the complaint at a hearing before the presiding officer at a time and place to be specified in the notice, provided such hearing shall be held not later than ninety days after a finding of reasonable cause."

meet, contained mandatory deadlines that, if not complied with, stripped the commission of jurisdiction. This court undertook an extensive review of the legislative history of §§ 46a-83 (b) and 46a-84 (b), as well as the statutory scheme in question, in order to discern the intent of the legislature. See id., 689–94. We did not, however, expressly examine whether the legislature intended the limitation to create a *subject matter jurisdictional* bar, nor did we analyze whether there had been a strong showing that the presumption of jurisdiction had been overcome. The court stated: "The parties do not specify whether their reserved questions are in personal or subject matter jurisdictional terms. As stated above, however, resolution of this case does not require consideration of that issue. We note, however, that our decision in this case is consistent with our recent cases in which we decided issues of jurisdiction based upon legislative intent. For example, in *Ambroise* v. *William Raveis Real Estate, Inc.*, [supra, 226 Conn. 764–65], in deciding whether the legislature, in imposing a time limitation, intended to impose a subject matter jurisdictional requirement on the right to appeal, we concluded that where the legislature has manifested an intent to make time constraints mandatory, they act as a subject matter jurisdictional bar." *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 700 n.13.

The failure of the court to undertake a specific inquiry into whether the legislature intended to create a subject matter jurisdictional bar, as well as its use of language that equated a mandatory obligation with subject matter jurisdiction, makes that case inapplicable to the issue in the present case. We do not mean to suggest that the court in *Angelsea Productions, Inc.*, would not have come to the same conclusion had it analyzed the statutes in question under the approach articulated in *Banks*. Consistent with our determination that whether

a time limit is mandatory is not determinative of whether the legislature intended the limitation to act as a jurisdictional bar, however, we conclude that the analysis undertaken in *Angelsea Productions, Inc.*, cannot be determinative of the issue in the present case.

Moreover, the legislature signaled its disapproval of *Angelsea Productions, Inc.*, by enacting Public Acts 1996, No. 96-241, which allowed the commission to keep jurisdiction over any complaint filed with it on or before January 1, 1996,[11] as well as by enacting Public Acts

[11] Public Act 96-241 is codified at General Statutes §§ 46a-82b, 46a-82c, and 46a-82d.

General Statutes § 46a-82b provides: "(a) Notwithstanding any provision of the general statutes to the contrary, the Commission on Human Rights and Opportunities shall have jurisdiction over any complaint filed pursuant to section 46a-82 on or before January 1, 1996, which has not been finally adjudicated or resolved by action of the commission, that the commission would have had jurisdiction over but for the failure of the Commission on Human Rights and Opportunities to comply with the time requirements of chapter 814c.

"(b) If the commission fails to issue a determination of reasonable cause or no reasonable cause on any such complaint not later than January 1, 1997, the executive director of the commission shall issue forthwith a release of the complaint from the commission, allowing the complainant to bring a civil action. Upon receipt of a release pursuant to this section, the complainant may bring a civil action in accordance with the provisions of sections 46a-100, 46a-101, 46a-103 and 46a-104, notwithstanding the statute of limitations pursuant to section 46a-102."

General Statutes § 46a-82c provides: "(a) Notwithstanding any provision of the general statutes to the contrary, the Commission on Human Rights and Opportunities shall have jurisdiction over any complaint filed pursuant to section 46a-82 after January 1, 1996, that the commission would have had but for the failure of the Commission on Human Rights and Opportunities to comply with the time requirements of section 46a-83 provided the commission takes action to comply with such time requirements with respect to such complaints not later than June 30, 1996.

"(b) The time frame contained in subsection (b) of section 46a-83 to conduct a review of the file shall be tolled if an answer is not timely received from the date the respondent's answer is due pursuant to subsection (a) of section 46a-83 until the date the answer is actually received by the commission."

General Statutes § 46a-82d provides: "(a) Any action filed pursuant to section 46a-94a, 46a-95 or 4-183 concerning a complaint filed pursuant to section 46a-82 on or before January 1, 1996, in which a final judgment has

1998, No. 98-245, which codified the commission's ability to retain jurisdiction over complaints even if it fails to meet statutory deadlines.[12] Given these legislative pronouncements, we are reluctant to read *Angelsea Productions, Inc.,* as controlling the question in the present case.

Even if we were to read *Angelsea Productions, Inc.,* as interpreting the statutory time limit at issue in that case as subject matter jurisdictional, however, we nonetheless conclude that the time limit at issue in *this* case is *not* subject matter jurisdictional. We recognize that ordinarily the same or similar language in the same statutory scheme should be given the same meaning. See *State* v. *Rivera,* 250 Conn. 188, 201, 736 A.2d 790 (1999) ("in the absence of persuasive evidence to the contrary, we may presume that a word used in different parts of the same statutory scheme has the same meaning"). That guideline of statutory interpretation; see *United Illuminating Co.* v. *New Haven,* 240 Conn. 422, 455, 692 A.2d 742 (1997) (rules and canons of statutory construction serve as important guidelines to determination of legislative meaning but do not "displace the

not been entered prior to June 6, 1996, otherwise valid except for the failure of the Commission on Human Rights and Opportunities to comply with the time requirements of chapter 814c is validated.

"(b) If any action filed pursuant to section 46a-94a, 46a-95 or 4-183 concerning a complaint filed pursuant to section 46a-82 on or before January 1, 1996, has failed to be tried on its merits because the action has been dismissed by the Superior Court for want of jurisdiction due to the failure of the Commission on Human Rights and Opportunities to comply with the time requirements of chapter 814c, a party to the action may, on or before October 1, 1996, petition the court to reopen such action. The court shall set aside the judgment and reinstate the case on the docket."

[12] Public Act 98-245, § 8, is codified at General Statutes § 46a-82e.

General Statutes § 46a-82e (a) provides: "Notwithstanding the failure of the Commission on Human Rights and Opportunities to comply with the time requirements of sections 46a-83 and 46a-84 with respect to a complaint before the commission, the jurisdiction of the commission over any such complaint shall be retained."

conclusions that careful interpretation yields"); does not apply in the present case.

This provision imposes a time limit, not on the ultimate decision in a case already before the commission; compare *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 681; but on the time within which a claimant must file a complaint with the commission. Thus, this provision has a different audience from that involved in *Angelsea Productions, Inc.* See *State* v. *Brown*, 242 Conn. 389, 406, 699 A.2d 943 (1997) ("a useful guide to the meaning of statutory language is an identification of the principal audience of that language"). The audience of this provision consists of potential victims of various forms of discrimination, not all of whom file their claims while advised by counsel. Thus, they may not be fully aware of the necessity of filing within the statutory time periods, and may even fail to do so because of justifiable, equitable factors.[13] Interpreting this time limit as subject matter jurisdictional, however, would necessarily preclude consideration of such factors by either the commission or a court. This provides a valid reason for declining to read the legislation as embodying the required strong showing of legislative intent to impose subject matter jurisdictional constraints. This also would be consistent with the purpose of the statutory scheme, which is to provide a remedy for victims of employment discrimination, while still giving adequate notice to the employer.

This conclusion also is consistent with the 1998 legislation, the suggestion of the dissent to the contrary

---

[13] Indeed, in the present case the plaintiff asserts that she was induced by her employer to delay the filing of her claim.

notwithstanding.[14] In that legislation, the General Assembly in effect disapproved the notion that the commission loses jurisdiction of a complaint by not deciding it within the applicable statutory time period. Thus, because the time limitation at issue in *Angelsea Productions, Inc.*, is no longer jurisdictional, we should be reluctant to read the different time limitation at issue in the present case as jurisdictional.

This does not mean, however, that the failure to meet the 180 day time limit in § 46a-82 (e) is without consequence. As we have stated, if a time requirement is deemed to be mandatory, it must be complied with, absent such factors as consent, waiver or equitable tolling. Thus, a complaint that is not filed within the mandatory time requirement is dismissible unless waiver, consent, or some other compelling equitable tolling doctrine applies. We conclude that the time limit of § 46a-82 (e) is mandatory, and thus the commission *could* properly dismiss the plaintiff's complaint if it was not filed within 180 days of the alleged act of discrimination.

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in

---

[14] We disagree with the dissent's suggestion that, by enacting the 1996 and 1998 legislation, the General Assembly also somehow affirmed that the provision at issue in this case is subject matter jurisdictional in nature. This provision was simply not on the legislative agenda in either year; the legislature was dealing with the different provision at issue in *Angelsea Productions, Inc.* It is simply unrealistic to assume that, when the legislature addressed the problems disclosed in the wake of *Angelsea Productions, Inc.*, it also addressed—or even considered—the provision at issue in the present case, which at that time was not in question.

the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Doe* v. *Statewide Grievance Committee*, supra, 240 Conn. 680–81. We conclude that the time requirement of § 46a-82 (e) is a matter of substance, not a matter of convenience, which imposes a mandatory duty. The commission, under the discriminatory practice complaint procedure; General Statutes § 46a-82 et seq.; is charged not only with accepting complaints, but with investigating them in order to decide which cases to pursue. The commission has limited resources to conduct such investigations, and in order to perform its various statutory duties, it must be able to decide how to allocate its resources. Dismissing untimely complaints in appropriate circumstances is a necessary policy decision that the commission is entitled to make in order to manage its limited resources.

The legislative history of § 46a-82 buttresses our conclusion that the legislature intended this time limit to be mandatory. Under the original statutory scheme,[15] a complainant had six months in which to file a discrimination complaint. The amount of time to file a discrimination complaint was reduced during floor debate on Public Acts 1959, No. 334, which gave the commission the right to order reinstatement and back pay. Opponents of the bill argued that six months was too long for an employee to wait to bring a complaint. See 8 H.R. Proc., Pt. 7, 1959 Sess., p. 2589, remarks of Representative Benjamin M. Schlossbach. Proponents of the bill agreed to a compromise. "[T]he gentleman from Westbrook raises a genuine point in connection with the time in which a complaint may be filed. The time was not important really in the bill as it was originally cast prior to the proposed change in it. The commission

---

[15] See footnote 5 of this opinion.

could only issue a cease and desist order. Now, under the proposed change in the bill, of course, it can reinstate and require the payment of back pay. If the period for filing the complaint is allowed to be too long, a substantial amount of back pay can build up, and it seems intelligent to narrow that period for filing down as much as possible." Id., p. 2596, remarks of Representative Almon S. Pinney.

The legislature returned to the issue of filing deadlines in 1974 when it passed Public Act 74-54, which increased the filing requirement from ninety days back to 180 days. The legislature increased the time limit in response to the commission's inability to handle federal deferrals and cases filed with it directly because of the lapse of the ninety days. "Now . . . federal agencies have much stronger filing periods than the state commission. With our 90 day filing period are limitations in the law that deferral takes longer then 90 days then again we cannot take the complaint. . . . [P]erhaps the reason for the bill is that many citizens not knowing of the commission get around to filing the complaint much past the 90 day period. . . . In the last two weeks we had to turn away 3 cases that came to our attention; perfectly valid complaints [on] the surface . . . because the 90 days had past." Conn. Joint Standing Committee Hearings, supra, p. 4, remarks of Arthur L. Green.

The commission's limited resources also contributed to the difficulties of working within a ninety day filing statute. "This bill, Mr. Chairman, would take care of a problem that has faced the agency for several years now. Because again the rather large case load . . . approximately, 700 pending complaints, approximately 22 full time investigators, we find it difficult to reach the complaint in time to take his or her complaint. . . . [It's a] staff size problem." Id., p. 3, remarks of Green.

Legislators supported an increase in the filing requirement to make state law conform to federal law and to give the commission more time to deal with complaints. "Presently, the State law provides for a 90-day period during which [an] application . . . can take place. Now, the Federal government has . . . 180-day period, and it's the policy of the Federal government to defer action to the State government in matters such as these. So what has happened on occasion is a . . . resident of Connecticut . . . could make a claim after the 90-day period, at which time the Federal government would have to take it under advisement, rather than the State . . . . So this bill would bring the State law into concert with the Federal law . . . ." 17 H.R. Proc., Pt. 2, 1974 Sess., pp. 854–55, remarks of Representative E. Ronald Bard. "[T]o keep the referral status deferral status and the modest amount of federal funding which goes with it, state laws are required to accommodate the federal law. Furthermore, because of the great backlog of cases due to an ever increasing case load . . . the time limit in some instances has run out before the commission investigating can take a sworn affidavit as required by statute." 17 S. Proc., Pt. 2, 1974 Sess., p. 522, remarks of Senator Thomas G. Carruthers.

The legislature's action in 1996 after this court's decision in *Angelsea Productions, Inc.*, further supports our conclusion that the 180 day time limit of § 46a-82 (e) is mandatory. In determining that the time limits in §§ 46a-83 (b) and 46a-84 (b) deprived the commission of jurisdiction if they were not complied with, the court stated that "the legislature considered the word 'shall' to be mandatory in the context of the discriminatory practice and complaint procedure." *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities,* supra, 236 Conn. 697. In response to this decision, the legislature swiftly passed Public Act 96-241, which allowed the commission to retain jurisdic-

tion.[16] Although the legislature disagreed with the court's interpretation that the commission lost jurisdiction if it failed to comply with the time limits in question, it agreed with the court that the filing requirements were mandatory: "Nothing in this amendment should be interpreted as overruling or changing the basic decision of the Supreme Court, the unanimous decision that shall in the context of these statutes is mandatory rather than directory . . . ." 39 H.R. Proc., Pt. 15, 1996 Sess., pp. 5196–97, remarks of Representative Dale Radcliffe. "I agree shall means shall . . . and it does not change the Supreme Court decision with regard to that." Id., p. 5197, remarks of Representative Richard D. Tulisano.

The legislative history shows that the legislature considered the time requirements in the discriminatory practice and complaint procedure statutory scheme to be substantive in nature, and not merely a matter of convenience for the commission.[17] The court in *Angelsea Productions, Inc.*, determined that the time limits of the discriminatory practice and complaint procedures were mandatory, an interpretation that the legislature expressly adopted. Our conclusion that the plaintiff was required to meet the 180 day filing requirement of § 46a-82 (e), absent a showing of waiver, con-

[16] *Angelsea Productions, Inc.*, was released on April 23, 1996; the legislature passed Public Act 96-241, on May 6, 1996, which allowed the commission to retain jurisdiction over complaints filed with it on or before January 1, 1996; and Public Act 96-241 became effective on June 6, 1996. See footnote 11 of this opinion.

[17] The fact that the time limits were considered substantive is further evidenced in the following debate in the House of Representatives. When introducing Public Act 74-54, Representative Bard stated: "[T]his bill's in the nature of a technical amendment." 17 H.R. Proc., supra, p. 854. Contrary to Representative Bard's classification of this amendment as a technical change, Representative Carl R. Ajello responded: "[I]t's a substantive change in the law of Connecticut, all be it to bring it in line with what the Federal law is . . . ." Id., p. 855. Representative Bard then responded: "I would thank the Minority Leader. He's correct. The words 'technical amendment' were used inadvisably." Id., p. 856.

sent, or some other equitable tolling doctrine, is thus in accord with *Angelsea Productions, Inc.*, and the legislature's own interpretation of the statutory scheme. The commission therefore properly raised the issue of the timeliness of the plaintiff's complaint.

We are unpersuaded by the plaintiff's argument that the commission is not entitled to raise the timeliness issue. The plaintiff claims that § 46a-82 (e) operates like a pure statute of limitations that may be raised only by a party, namely, the employer, as a special defense. We disagree.

Complaints filed with the commission are not the same as actions filed in court. Although in the normal course of a legal action the court may not sua sponte raise a statute of limitations defense; *Orticelli* v. *Powers*, 197 Conn. 9, 17, 495 A.2d 1023 (1985); procedures before the commission are different. In typical actions before a court, the parties, and not the court, investigate the charges and raise all appropriate defenses. In the case of antidiscrimination petitions, however, the commission is responsible for conducting an investigation into the allegations to determine whether to proceed on the petition. As we have stated previously, the commission is entitled to make policy decisions regarding how to allocate its limited resources and, therefore, we conclude that the commission is entitled to raise the timeliness issue in conformity with its institutional responsibilities in the petition process. The commission must, however, consider a complainant's claim that an equitable tolling doctrine applies to a complaint filed more than 180 days after the alleged act of discrimination.

The case must be remanded to the Appellate Court for a specific determination of the various issues raised in the plaintiff's appeal, namely, whether the untimeliness of the plaintiff's complaint should have been

excused on the basis of waiver or equitable tolling. Although the Appellate Court stated in a footnote that "the plaintiff has not shown a meaningful waiver," and, "[t]here is little or no merit to the plaintiff's claim of equitable tolling"; *Williams* v. *Commission on Human Rights & Opportunities*, supra, 54 Conn. App. 258 n.6; this was dictum, and the plaintiff's claim should be addressed on its merits.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings according to law.

In this opinion NORCOTT and HODGSON, Js., concurred.

ZARELLA, J., with whom PALMER, J., joins, concurring in part and dissenting in part. I agree with the conclusion in part I of the majority opinion that the named defendant commission on human rights and opportunities (commission) has standing to bring this appeal. I disagree, however, with the reasoning of the majority in part II of its opinion and its conclusion that the time limitation in General Statutes § 46a-82 (e) is not subject matter jurisdictional.

The analysis of the majority relies, in large part, on its perception that this court has been inconsistent in its approach to determining whether a time limitation is a subject matter jurisdictional bar. The majority asserts that there are two lines of cases: one that "focuse[s] on whether the legislature intended the time limitation to be subject matter jurisdictional"[1] and another that "focuse[s] on whether the statutory provision is mandatory or directory."[2] Page 267 of the majority opinion. The majority notes that, within the second line of cases, some cases equate mandatory language with jurisdic-

---

[1] E.g., *Banks* v. *Thomas*, 241 Conn. 569, 582, 698 A.2d 268 (1997).

[2] E.g., *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 680–81, 694 A.2d 1218 (1997).

tion; see *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 683, 694 A.2d 1218 (1997); *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 700 n.13, 674 A.2d 1300 (1996) (*Angelsea I*); while others separate the concepts of mandatory language and subject matter jurisdiction. See, e.g., *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 173, 646 A.2d 138 (1995); *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 240, 242, 558 A.2d 986 (1989).

In my view, the majority's construction of these analytical categories elevates form over substance. Notwithstanding the majority's creation of these analytical categories, all of the cases cited by the majority, including *Angelsea I* and *Doe*, consistently have used the tools of statutory interpretation—the language of the statute, legislative history, policy considerations, and the statute's relationship to existing legislation and common-law principles governing the same subject matter; e.g., *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 777, 739 A.2d 238 (1999)—to discern legislative intent. I do not quarrel with the majority's conclusion that, analytically, we are guided by *Banks* v. *Thomas*, 241 Conn. 569, 583, 698 A.2d 268 (1997), and *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993). Nevertheless, I see no meaningful difference between the various classes of cases outlined by the majority inasmuch as all of those cases depend upon statutory interpretation to determine legislative intent.[3]

---

[3] The majority, after going to some trouble to determine that it should focus on legislative intent, shifts its gaze away from that intent regarding *jurisdiction* to a discussion of the legislature's intent regarding limitations on *remedies* in *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities*, 165 Conn. 318, 332, 334 A.2d 443 (1973). The majority states: "[F]rom 1975 forward, including the present, although the statutory scheme requires that the complaint be filed within 180 days from the last date of discrimination, the same statutory scheme permits the agency to award back pay for a period of up to two years. This bifurcation of the filing period and the permissible remedial period is inconsistent with the notion that the

According to the majority, however, plain vanilla legislative intent is insufficient. Instead, the foundation of the majority opinion is its requirement that there be "a *strong showing of a legislative intent* to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Emphasis added; internal quotation marks omitted.) Page 269 of the majority opinion, quoting *Banks* v. *Thomas*, supra, 241 Conn. 583. Indeed, the notion that there must be a *strong showing* of legislative intent to create a jurisdictional time limit pervades the majority opinion.[4]

180 day time limit for filing is subject matter jurisdictional, because it is unlikely that the legislature would have intended to place a subject matter jurisdictional time limitation on the filing of the claim that was different from and substantially shorter than the permissible remedial period for the same claim." Page 275 of the majority opinion. I do not agree with this conclusion.

*Veeder-Root Co.* concerned an award of back pay. See *Veeder-Root Co.* v. *Commission on Human Rights & Opportunities*, supra, 165 Conn. 330. The legislature's decision to limit the time during which back pay may be awarded is as consistent with a 180 day jurisdictional bar as it is with a statute of limitation. For example, assume that, as in *Veeder-Root Co.*, a female employee is hired and paid less than her male counterparts. She quits after three years. Assume also that the clock on the 180 day time limit begins to run after she receives her last paycheck. Pursuant to § 46a-82 (e), her complaint must be filed with the commission within 180 days. If she does so, and prevails, even though the discrimination in pay had persisted for three years, an award of back pay would be limited to two years under General Statutes § 46a-86 (b).

The majority's reliance on *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 559 A.2d 1120 (1989), likewise is misplaced. The analysis in that case, like that in *Veeder-Root Co.*, resulted in a limitation on the remedy available. See generally id., 471–73, 475. Although the court did consider whether the complaint was timely, it resolved that issue by relying on a "continuing violation" theory under which each pension check received by the person subject to discrimination constituted a separate violation; id., 476; and not on the searching statutory analysis of legislative intent espoused by the majority in the present case. In sum, the most that can be said about the foregoing cases is that they neither support nor militate against a finding that the time limitation in § 46a-82 (e) is jurisdictional in nature.

[4] See page 266 of the majority opinion ("we have stated many times that there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional");

The notion that there must be such a showing originated in *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 226 Conn. 765. In that case, after concluding that "the proper analysis of a statutory time limitation on the right to appeal devolves into a question of statutory construction"; id., 764; this court stated that, "taking into account the established principle that every presumption is to be indulged in favor of jurisdiction . . . we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Citations omitted; internal quotation marks omitted.) Id., 765. The court concluded that the legislature had intended the time limit at issue in *Ambroise* to be subject matter jurisdictional. Id. Because the *Ambroise* decision announced the requirement of a "strong showing of a legislative intent"; id.; to create a jurisdictional time limit, it seems to me that it provides an appropriate yardstick against which to assess the legislative intent in the present case.

Significantly, the court in *Ambroise* did not require that the statutory language or the legislative record expressly provide that the time limit is jurisdictional. Nor did it state, or even imply, that the presumption of jurisdiction requires that we ignore fundamental rules

---

id., p. 269 (" '[i]n light of the strong presumption in favor of jurisdiction, we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar' "); id., pp. 269–70 ("[a]lthough we acknowledge that mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction"); id., p. 278 ("[t]here is no indication that the legislature intended to deprive the commission of the authority to entertain untimely discrimination complaints, much less a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar" [internal quotation marks omitted]); id., p. 280 (criticizing *Angelsea I* because it did not "analyze whether there had been a strong showing that the presumption of jurisdiction had been overcome").

of statutory construction. Rather, the court relied on "the language, the historical background and the purpose of the statute." Id.

In *Ambroise*, after discussing the statutory language, this court considered the historical background of the statutory scheme, drawing on a well established distinction between purely statutory actions and those that were recognized at common law. Id., 766. The court in *Ambroise* stated: "It is significant . . . that [the statute] contains a statutory time period for taking an appeal with regard to a statutory remedy that has no common law counterpart. . . . Where . . . a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter. . . . In such cases, the time limitation is not to be treated as an ordinary statute of limitation, but rather is a limitation on the liability itself, and not of the remedy alone. . . . [U]nder such circumstances, the time limitation is a substantive and jurisdictional prerequisite, which may be raised [by the court] at any time, even by the court sua sponte, and may not be waived. . . . *Ecker* v. *West Hartford*, 205 Conn. 219, 232, 530 A.2d 1056 (1987) (wrongful death action); *Vecchio* v. *Sewer Authority*, 176 Conn. 497, 504–505, 408 A.2d 254 (1979) (appeal from sewer assessment); *Hillier* v. *East Hartford*, 167 Conn. 100, 104–105, 355 A.2d 1 (1974) (tort action against municipalities pursuant to General Statutes § 13a-149); *Diamond National Corporation* v. *Dwelle*, 164 Conn. 540, 546–47, 325 A.2d 259 (1973) (enforcement of mechanic's lien). *It is reasonable to infer, therefore, that the legislature intended the limitation on the right to appeal contained in [the statute] to operate similarly to these statutory time limitations on the right to initiate a statutory action.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Ambroise* v. *William Raveis Real*

*Estate, Inc.,* supra, 226 Conn. 766–67. Thus, under *Ambroise*—the first case to articulate the strong showing of intent requirement—the language of the statute and the fact that the statute did not have a common-law counterpart were strongly suggestive of a jurisdictional bar.

In the present case, the relevant language of General Statutes § 46a-82 (e) emphatically states: "Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination . . . ." As the court in *Ambroise* succinctly stated, "[t]hat language means what it says." *Ambroise* v. *William Raveis Real Estate, Inc.,* supra, 226 Conn. 765. The majority also recognizes that words such as "must" and "shall" are consistent with a jurisdictional time limit.

Moreover, § 46a-82 creates a statutory time limit for initiating an adjudicatory process that is purely statutory in nature; an action under § 46a-82 has no common-law counterpart. I would conclude that, consistent with *Ambroise,* the language of § 46a-82 (e) and the fact that § 46a-82 affords a purely statutory remedy with no common-law counterpart are strongly suggestive of a legislative intent to make the time limits in § 46a-82 (e) subject matter jurisdictional.

In *Federal Deposit Ins. Corp.* v. *Hillcrest Associates,* supra, 233 Conn. 172, this court drew a distinction between time limits on the initiation of a statutory action and time limits on procedures occurring thereafter. In *Hillcrest Associates,* the defendants challenged the plaintiff's filing of a motion for a deficiency judgment beyond the statutory time limit. Id., 160, 162. In finding that the limit was nonjurisdictional, the court stated: "We recognize that, as the defendants argue, in other contexts we have held that *where a specific time limitation is contained within a statute that creates*

*a right of action that did not exist at common law . . .
the time limitation is a substantive and jurisdictional
prerequisite,* which may be raised at any time, even by
the court sua sponte, and may not be waived. . . .

"That line of cases, however, is distinguishable. These
cases, for the most part, involve time limitations, not
only on the durational life of the particular cause of
action, *but on the time within which the party must
institute an action in court, or . . . before the proper
quasi-judicial agency. Thus, they involve statutes that
set time limitations for instituting the process of adju-
dication.*" (Citations omitted; emphasis added; internal
quotation marks omitted.) Id., 171–72. The court then
concluded: "Unlike the cases in which we held the statu-
tory time limitation to be jurisdictional, the [statutory]
time limitation [at issue in *Hillcrest Associates*] does
not limit bringing the action to court in the first instance.
. . . In the absence of clear legislative indication, it
would be cutting the notion of subject matter jurisdic-
tion too finely to apply it, not to a separate statutory
cause of action, but to a statutory procedure that is part
of, and complementary to, the traditional and equitable
common law action of strict foreclosure." Id., 172. The
majority's conclusion in the present case that § 46a-82
(e), which *does* "set time limitations for instituting the
process of adjudication"; id.; is not jurisdictional is con-
trary to the logic of *Hillcrest Associates.*

This court's decision in *Angelsea Productions, Inc.*
v. *Commission on Human Rights & Opportunities,*
supra, 236 Conn. 681, and legislative action in response
to that decision further support the view that the legisla-
ture intended the time limit in § 46a-82 (e) to be jurisdic-
tional. In *Angelsea I,* this court held that the legislature
intended the time limits in General Statutes (Rev. to

1993) §§ 46a-83 (b)[5] and 46a-84 (b)[6] that apply to the *commission* to be jurisdictional. *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 700. In *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 248 Conn. 392, 399, 727 A.2d 1268 (1999) (*Angelsea II*), this court confirmed, without criticism, that *Angelsea I* had concluded that the legislature intended for those time limits on the statutory discriminatory practice complaint procedure carried out by the commission to be jurisdictional. Section 46a-82 (e) also governs that complaint procedure. The "familiar principle of statutory con-

[5] General Statutes (Rev. to 1993) § 46a-83 (b) provides: "Before issuing a finding of reasonable cause or no reasonable cause, the investigator shall afford each party and his representative an opportunity to provide written or oral comments on all evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes. The investigator [designated by the executive director of the commission] shall consider such comments in making his determination. *The investigator shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it is based not later than nine months from the date of filing of the complaint, except that for good cause shown, the executive director or his designee may grant a single extension of the investigation of three months.* If the investigator makes a determination that there is reasonable cause to believe that a violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days from receipt of notice of the reasonable cause finding to elect a civil action in lieu of an administrative hearing pursuant to section 46a-84. If either the complainant or the respondent requests a civil action, the commission, through the attorney general or the commission counsel, shall commence an action pursuant to subsection (b) of section 46a-89 within forty-five days of receipt of the complainant's or the respondent's notice of election of a civil action." (Emphasis added.)

[6] General Statutes (Rev. to 1993) § 46a-84 (b) provides: "Upon certification of the complaint, the executive director of the commission or his designee shall appoint a hearing officer to act as a presiding officer to hear the complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of the complaint, as the same may have been amended, requiring the respondent to answer the charges of the complaint at a hearing before the presiding officer at a time and place to be specified in the notice, *provided such hearing shall be held not later than ninety days after a finding of reasonable cause.*" (Emphasis added.)

struction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance"; (internal quotation marks omitted) *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 343, 612 A.2d 1203 (1992); supports the conclusion that, because the legislature intended the phrases "shall make a finding . . . not later than nine months"; General Statutes (Rev. to 1993) § 46a-83 (b); and "such hearing shall be held not later than ninety days"; General Statutes (Rev. to 1993) § 46a-84 (b); to be jurisdictional time limits, it also intended the phrase "[a]ny complaint . . . must be filed" to be jurisdictional.

*Angelsea I* also provides insight into the policy behind § 46a-82 (e). The complaint procedure in § 46a-82 was designed to provide both complainants and respondents with a means to resolve discrimination claims without the greater delay and expense characteristic of bringing an action in state or federal court. Quoting from the legislative record, the court in *Angelsea I* stated: "The [commission] is in the nature of an administrative agency and the purpose of the administrative agency is to expeditiously resolve some complaints in more of an informal nature than the court system would allow." (Internal quotation marks omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 697, quoting 34 H.R. Proc., Pt. 23, 1991 Sess., pp. 8917–18, remarks of Representative Eric D. Coleman. As the Appellate Court concluded, "[t]he *entire* discriminatory practice complaint procedure . . . can be implemented only through strict enforcement of its time limits." (Emphasis in original; internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, 54 Conn. App. 251, 257, 733 A.2d 902 (1999), quoting *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 692.

The majority in the present case asserts that "the legislature signaled its disapproval of [*Angelsea I*] by enacting Public Acts 1996, No. 96-241, which allowed the commission to keep jurisdiction over any complaint filed with it on or before January 1, 1996, as well as by enacting Public Acts 1998, No. 98-245, which codified the commission's ability to retain jurisdiction over complaints even if it fails to meet statutory deadlines. Given these legislative pronouncements, [the court is] reluctant to read [*Angelsea I*] as controlling the question in the present case." Pages 281–82 of the majority opinion.

The majority, in my view, fails to consider fully the significance of the legislation enacted after *Angelsea I*. As the majority acknowledges, the legislature did not change the statutory language that this court had construed as jurisdictional. Rather, the 1996 legislation saved the commission's jurisdiction over complaints filed *before* January 1, 1996. Public Acts 1996, No. 96-241, § 1. I would conclude that "[the legislature's] failure to correct or undermine what [this court] stated in [*Angelsea I*] is evidence that the legislature ha[d] validated [the] interpretation"; *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 693; that the time limits in General Statutes (Rev. to 1993) §§ 46a-83 (b) and 46a-84 (b) continued to be a jurisdictional requirement for untimely filed complaints not saved by the 1996 legislation.

Furthermore, the legislature waited approximately two more years before it acted to preserve the commission's jurisdiction over untimely filed cases pending or filed *on or after* July 1, 1998. See Public Acts 1998, No. 98-245, §§ 8, 14. This court has recognized the "presumption that, in enacting a statute, the legislature intend[s] to effect a change in existing law." *Shelton* v. *Commissioner of the Department of Environmental Protection*, 193 Conn. 506, 513, 479 A.2d 208 (1984).

Common sense dictates that, before the 1998 legislation, the legislature accepted this court's holding in *Angelsea I* that the time limits in General Statutes (Rev. to 1993) §§ 46a-83 (b) and 46a-84 (b) are jurisdictional; otherwise, the 1998 legislation would have been unnecessary. This court should "not presume that the legislature has enacted futile or meaningless legislation or that a change in a law was made without a reason." *City Council* v. *Hall,* 180 Conn. 243, 251, 429 A.2d 481 (1980).

The legislature's use of similar emphatic language in the same statutory scheme convinces me that the time limits of both provisions—those time limits binding the commission, which were construed as jurisdictional in *Angelsea I,* and the time limit in § 46a-82 (e)—would be subject matter jurisdictional until the legislature says otherwise. In 1998, the legislature made the *commission's* time limits nonjurisdictional. Although the legislature could have changed the time limit with respect to the filing of complaints in § 46a-82 (e) or could have added a provision for an extension of time, it did not do so. Because the legislature was well aware of this court's view that some time limits in the discriminatory practice complaint procedure were jurisdictional, I would conclude that the failure to change the unequivocal language of § 46a-82 (e), which is part of that same procedure, suggests that the legislature also intended the time limit in that subsection to be jurisdictional. See *Scheyd* v. *Bezrucik,* 205 Conn. 495, 506, 535 A.2d 793 (1987) (because "legislature is presumed to be aware of interpretation that courts have placed on existing legislation," failure of legislature to amend statute in response to our interpretation thereof presumes that it acquiesced in our interpretation).

Therefore, I would conclude that, consistent with the reasoning in *Ambroise* and *Angelsea I,* the strong showing of legislative intent has been made in this case. I, therefore, would affirm the Appellate Court's conclu-

sion that "must be filed" in § 46a-82 (e) is subject matter jurisdictional.

Accordingly, I respectfully concur in part and dissent in part.