COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES ET AL. *v.* SAVIN
ROCK CONDOMINIUM ASSOCIA-
TION, INC., ET AL.

COMMISSION ON HUMAN RIGHTS AND
OPPORTUNITIES ET AL. *v.* GROUP
CONCEPTS MANAGEMENT,
INC., ET AL.
(SC 17179)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

374

Argued January 11—officially released April 19, 2005

*Charles Krich*, principal attorney, with whom, on the brief, was *Margaret J. Nurse-Goodison*, assistant commission counsel, for the appellant (named plaintiff in each case).

*Christopher F. Wanat*, with whom, on the brief, was *Rachel M. Segger*, for the appellees (defendants in each case).

*Opinion*

KATZ, J. The principal issue in this consolidated appeal is whether, despite its failure to comply with the time requirements for investigating and making a final disposition prescribed in General Statutes § 46a-64c (f),[1] the named plaintiff,[2] the commission on human rights and opportunities (commission), had subject matter jurisdiction to adjudicate complaints of housing discrimination. The trial court granted the motions of the defendants Savin Rock Condominium Association, Inc. (Savin Rock), and Group Concepts Management, Inc. (Group Concepts),[3] to dismiss the complaints due to the commission's lack of jurisdiction and rendered judgment thereon. We conclude that the commission's failure to adhere to the time limitations imposed by § 46a-64c (f) does not serve as a jurisdictional bar and, accordingly, we reverse the judgment of the trial court.

The record discloses the following undisputed facts. On September 6, 2000, Patricia Wright-Khan filed two

[1] General Statutes § 46a-64c (f) provides: "Notwithstanding any other provision of this chapter, complaints alleging a violation of this section shall be investigated within one hundred days of filing and a final administrative disposition shall be made within one year of filing unless it is impracticable to do so. If the Commission on Human Rights and Opportunities is unable to complete its investigation or make a final administrative determination within such time frames, it shall notify the complainant and the respondent in writing of the reasons for not doing so."

[2] The commission brought this consolidated action on behalf of the complainants, Patricia Wright-Kahn and her son, Robert McCormack, and one of its commissioners, Andrew M. Norton, who had authorized the action.

[3] In its complaints, the commission also named as defendants various other individuals and entities associated with Savin Rock and Group Concepts. Those parties are not involved in this appeal. For purposes of convenience, we refer to Savin Rock and Group Concepts individually by name and collectively as the defendants.

complaints with the commission,[4] alleging that she had been discriminated against by Savin Rock and Group Concepts because of her race, color and disabilities in violation of § 46a-64c when she was denied equal services associated with her housing ownership. Specifically, Wright-Kahn alleged that Savin Rock and Group Concepts had failed to make certain repairs to her condominium unit and had performed other repairs inadequately, had failed to protect her from her neighbors' discriminatory harassment, and had failed to accommodate reasonably her disabilities. On September 4, 2001, she amended her complaints to assert claims on behalf of her minor son, Robert McCormack. The defendants moved to dismiss the complaints, asserting that the commission had divested itself of jurisdiction by failing to complete a timely investigation and disposition of the complaints pursuant to § 46a-64c (f). On March 28, 2002, the commission sent notice to the parties, pursuant to § 46a-64c (f), informing them that it was unable to complete its investigation within the statutory time frame. The defendants objected to the commission's late notice and filed a request for a hearing on their motions to dismiss. The commission did not hold a hearing, and it denied the motions by way of a letter dated April 2, 2002. The commission thereafter denied the defendants' motions for reconsideration. On September 27, 2002, following an investigation pursuant to General Statutes § 46a-83 (d),[5] the commission issued a finding of reasonable cause.

---

[4] The commission, and thereafter the trial court, consolidated the two complaints upon the defendants' motions.

[5] General Statutes § 46a-83 (d) provides: "Before issuing a finding of reasonable cause or no reasonable cause, the investigator shall afford each party and his representative an opportunity to provide written or oral comments on all evidence in the commission's file, except as otherwise provided by federal law or any other provision of the general statutes. The investigator shall consider such comments in making his determination. The investigator shall make a finding of reasonable cause or no reasonable cause in writing and shall list the factual findings on which it is based not later than one hundred ninety days from the date of the determination based on the review of the

On October 4, 2002, the defendants elected to proceed in a civil action in lieu of an administrative appeal, pursuant to § 46a-83 (d). See footnote 5 of this opinion. In response to the defendants' notice of election, the commission filed two civil complaints dated November 12, 2002, on behalf of Wright-Kahn, McCormack and commissioner Andrew M. Norton. See footnotes 2 and 4 of this opinion. On January 27, 2003, the defendants moved to dismiss the action, claiming that the trial court did not have subject matter jurisdiction because the commission had not conducted a timely investigation and had not issued a timely final administrative disposition as required under § 46a-64c (f). Additionally, the defendants claimed that the commission's failure to notify them of its intent to pursue the investigation until well after the statutory deadlines had lapsed deprived them of their rights to due process. The commission filed a memorandum of law in opposition to the motions to dismiss asserting that it had complied with § 46a-64c (f) by sending notice to the parties that the commission had found it impracticable to complete the investigation within the time periods set forth in the statute. Additionally, the commission contended that its failure to meet the time deadlines did not cause it, or concomi-

complaint, conducted pursuant to subsection (b) of this section, except that for good cause shown, the executive director or his designee may grant no more than two extensions of the investigation of three months each. If the investigator makes a determination that there is reasonable cause to believe that a violation of section 46a-64c has occurred, the complainant and the respondent shall have twenty days from receipt of notice of the reasonable cause finding to elect a civil action in lieu of an administrative hearing pursuant to section 46a-84. If either the complainant or the respondent requests a civil action, the commission, through the Attorney General or a commission legal counsel, shall commence an action pursuant to subsection (b) of section 46a-89 within forty-five days of receipt of the complainant's or the respondent's notice of election of a civil action."

Subsection (d) was amended in 2003, but the legislature made no substantive changes relevant to the issue on appeal. See Public Acts, Spec. Sess., June, 2003, No. 03-06, § 193. For purposes of convenience, references herein to § 46a-83 (d) are to the current revision.

tantly the trial court, to lose jurisdiction over the complaints. The trial court concluded that the deadlines were mandatory and, therefore, the commission's failure to meet them divested the commission of jurisdiction. Accordingly, the trial court granted the defendants' motions to dismiss the complaints and thereafter denied the commission's motion for reargument. The commission then filed the present appeal.[6]

The commission claims that its failure to comply with § 46a-64c (f) did not divest it of jurisdiction over the complaint. Specifically, it contends that the trial court improperly dismissed the action because, even if the commission had not investigated and made a final disposition of the complaints within the time periods prescribed by § 46a-64c (f), these facts did not deprive the commission, and concomitantly the trial court, of subject matter jurisdiction. The defendants assert in response that the mandatory time requirements of § 46a-64c (f) are a prerequisite to jurisdiction because the legislature imposed the deadlines solely to ensure speedy resolution of discrimination claims, and this result can be achieved only through strict enforcement of the deadlines. Alternatively, the defendants contend that, even if we disagree with their jurisdictional claim, we nevertheless should affirm the judgment of the trial court because the commission's notification to the parties that it could not complete its investigation in the time prescribed by statute was *so* untimely that they were denied their rights to due process. We agree with the commission and reject the defendants' alternate ground for affirmance.

I

The principal issue involves the trial court's interpretation of the time requirements of § 46a-64c (f). We

---

[6] The commission appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

begin with our well established principles of statutory interpretation in analyzing the commission's claim. Our legislature recently has enacted General Statutes § 1-2z, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." The present case involves not merely the meaning of the words outlining the time requirements, but, rather, requires an analysis of what jurisdictional significance, if any, the legislature intended to attach to those requirements. We do not write on a clean slate.

In *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266–69, 777 A.2d 645 (2001), this court, before deciding that the 180 day filing requirement for discrimination complaints under General Statutes § 46a-82 (e) is not subject matter jurisdictional, clarified the analysis for deciding whether a time limit is subject matter jurisdictional. "A conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances . . . a subject matter jurisdictional defect may not be waived . . . [and] may be raised at any time, even on appeal . . . and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly. . . . Therefore, we have stated many times that there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional." (Citations omitted.) Id., 266. We recognized our inconsistent approaches in determining whether a time limitation is jurisdictional, one line of cases focusing "on whether the legislature intended the

time limitation to be subject matter jurisdictional, and a second line of cases . . . focus[ing] on whether the statutory provision is mandatory or directory." Id., 267.

We concluded in *Williams* that a determination that a time limit is mandatory does not necessarily mean that it also is subject matter jurisdictional. Id., 269–70. "Although we acknowledge that mandatory language may be an indication that the legislature intended a time requirement to be jurisdictional, such language alone does not overcome the strong presumption of jurisdiction, nor does such language alone prove strong legislative intent to create a jurisdictional bar. In the absence of such a showing, mandatory time limitations must be complied with absent an equitable reason for excusing compliance, including waiver or consent by the parties. Such time limitations do not, however, implicate the subject matter jurisdiction of the agency or the court." Id. Therefore, in deciding whether the filing requirement of § 46a-82 (e) implicates the commission's subject matter jurisdiction, we examined in *Williams* whether the legislature, in imposing the time limitation, intended to impose a subject matter jurisdictional requirement and concluded that, despite statutory language that appeared mandatory, the genealogy and legislative history of the statute, as well as our case law addressing the policy underlying the statute, reflected a legislative intent not to impose a jurisdictional bar to complaints filed after the prescribed period. Id., 270–71.

We therefore turn to the question in the present case of whether the legislature, in imposing the time limitation in § 46a-64c (f), intended to impose a subject matter jurisdictional requirement. Section 46a-64c (f) provides in relevant part that "complaints alleging a violation of this section shall be investigated within one hundred days of filing and a final administrative disposition shall be made within one year of filing unless it is impractica-

ble to do so. If the [commission] is unable to complete its investigation or make a final administrative determination within such time frames, it shall notify the complainant and the respondent in writing of the reasons for not doing so." Although the word "shall" certainly reflects the legislature's intent to have the commission fulfill its obligation to investigate and issue a final determination on a complaint within the time limitations set forth in the statute, that obligation must be read in conjunction with the language that follows the limitations period—"unless it is impracticable to do so"— expressly excusing the commission's noncompliance. That statutory proviso, in conjunction with the notice requirement that follows, indicates the legislature's recognition that there may be instances in which it is not practicable to conduct a full investigation and issue a final decision within the time limitations and, thus, its intention to provide a condition under which the commission's noncompliance is excused. Indeed, to construe the statute as reflecting an intent to divest the commission of jurisdiction over the complaint would render the notice requirement essentially meaningless. In other words, the presumption in favor of jurisdiction is reinforced, not undermined, by the statute's plain language.

Reference to General Statutes § 46a-82e, a statute setting forth remedies for the commission's failure to adhere to certain time limitations applicable to discrimination claims other than housing claims, reinforces that assessment. See *Cagiva North America, Inc.* v. *Schenk*, 239 Conn. 1, 12, 680 A.2d 964 (1996) ("[w]hen construing a statute, we may look for guidance to other statutes relating to the same general subject matter, as the legislature is presumed to have created a consistent body of law"). Section 46a-82e (a) provides: "Notwithstanding the failure of the [commission] to comply with the time requirements of [General Statutes §§] 46a-83 and

46a-84 with respect to a complaint before the commission, the jurisdiction of the commission over any such complaint shall be retained." The legislature enacted § 46a-82e in response to this court's decision in *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 700, 674 A.2d 1300 (1996), wherein we held that the commission's failure to comply with statutory timelines under § 46a-83 or § 46a-84 for investigating a complaint deprived the commission of jurisdiction to adjudicate complaints pending before it.[7] See *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 281 (noting that legislature's enactment of Public Acts 1996, No. 96-241, and Public Acts 1998, No. 98-245, "signaled its disapproval of *Angelsea Productions, Inc.*"). In the absence of flexible language in either § 46a-83 or § 46a-84, such as that set forth in the statute at issue here, the saving provision in § 46a-82e was necessary to save the complaints over which the commission could lose jurisdiction. Having saved expressly from the jaws of subject matter jurisdiction claims of employment discrimination, which account for a broad category of discrimination claims, it runs counter to reason to ascribe a different and indeed harsher legislative intent with regard to claims of housing discrimination. See *State* v. *Kirk R.*, 271 Conn. 499, 525, 857 A.2d 908 (2004) (It is well established "that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construc-

---

[7] The legislature first enacted No. 96-241 of the 1996 Public Acts to save certain complaints then pending before the commission and the courts that were subject to dismissal as a result of the commission's inability to comply with statutory timelines, pursuant to *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 681. See General Statutes §§ 46a-82c and 46a-82d (addressing complaints filed after January 1, 1996). The legislature thereafter enacted Public Acts 1998, No. 98-245, to clarify its intent that the commission retain jurisdiction over *future* complaints in the event that the commission should fail to comply with the time limitations. See General Statutes § 46a-82e (a).

tion . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." [Internal quotation marks omitted.]). Indeed, ascribing such an intent would seem particularly incongruous in light of the fact that the legislature imposed shorter time limitations for the adjudication of housing discrimination claims than for other types of discrimination claims. Compare General Statutes § 46a-64c (f) (prescribing one year limitation period for final disposition of housing discrimination claim) with General Statutes § 46a-82e (d) (1) (prescribing procedure for compelling finding of reasonable cause in other discrimination cases when complaint has been pending for more than two years).

We further note that, not only would the imposition of a jurisdictional bar in § 46a-64c (f) create an inconsistency in the treatment of housing and nonhousing discrimination cases, it also would create an internally inconsistent reading of the time periods governing housing discrimination complaints themselves. Section 46a-64c (f) controls only the relevant time period for investigation, whereas § 46a-83 (d) controls the time period for the investigator's finding of reasonable cause, which triggers the right to a hearing. The latter statute applies to any discrimination complaint and, as we just have noted, is subject to the relaxed standard of § 46a-82e (a); thus that time period is nonjurisdictional. A construction of § 46a-64c that, because of a failure to investigate timely, would bar an administrative hearing over a claim of housing discrimination while allowing a potentially indefinite period for a determination of reasonable cause, creates an internal inconsistency that suggests an unintended result in view of the remedial

purpose of our laws prohibiting discrimination.[8] See, e.g., *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 138, 827 A.2d 659 (2003) (noting rule of construction that we do not interpret statutes to reach bizarre or absurd results).

Our construction of § 46a-64c (f) is consistent with the federal courts' interpretation of the analogous provision of Title VII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq. The genesis of and purpose behind Connecticut's current fair housing statute are reflected in the title of the enacting legislation, "An Act Adopting the Comprehensive Connecticut Fair Housing Statute Conforming to the Federal Fair Housing Act"; Public Acts 1990, No. 90-246 (P.A. 90-246); which was codified as § 46a-64c.[9] As then Senator Richard Blumenthal remarked at the adoption of the legislation, "[t]his is landmark legislation . . . that sets out a separate fair housing act with all the standards and assurances that exist under Federal law. Indeed, it incorporates the federal standards into our state statute . . . ." 33

---

[8] Indeed, the defendants' construction of § 46a-64c would lead to a further inconsistency. Under General Statutes § 46a-101 (b), a complainant who has filed a timely complaint may seek a release from the commission to file a civil action "if his complaint . . . is still pending after the expiration of two hundred ten days from the date of its filing." Applying the defendants' construction, the commission would lack jurisdiction to issue that release if it had not completed its investigation within 100 days as required under § 46a-64c (f).

[9] The state's first legislative prohibition against housing discrimination was enacted in 1959 when the legislature amended the public accommodation law. See Public Acts 1959, No. 113. Thereafter, Congress passed the Civil Rights Act of 1968, which provided greater specificity and protection against discrimination than Connecticut's fair housing laws. See Civil Rights Act of 1968, Pub. L. No. 90-284, tit. VIII, §§ 801 through 819, 82 Stat. 73, 81–89. The federal Fair Housing Amendments Act of 1988 then threw state and federal law further out of alignment. See Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, § 5, 102 Stat. 1619 (codified at 42 U.S.C. § 3062 [k]). It was to bridge these gaps that Connecticut's legislature enacted P.A. 90-246. See footnote 10 of this opinion.

S. Proc., Pt. 11, 1990 Sess, p. 3494.[10] With the intent
of creating a state antidiscrimination housing statute
consistent with its federal counterpart, the legislature
adopted § 46a-64c and related provisions. The notice
provision in § 46a-64c (f) conforms the state's time limi-
tations to those of its federal counterpart, specifically,
42 U.S.C. § 3610 (a) (1), which provides in relevant
part: "(B) Upon the filing of [a housing discrimination]
complaint . . . (iv) the Secretary [of the Department
of Housing and Urban Development] shall make an
investigation of the alleged discriminatory housing
practice and complete such investigation within 100
days after the filing of the complaint . . . unless it is
impracticable to do so. (C) If the Secretary is unable
to complete the investigation of the complaint within
100 days after the filing of the complaint . . . the Sec-
retary shall notify the complainant and respondent in
writing of the reasons for not doing so." Furthermore,
42 U.S.C. § 3610 (g) (1) provides in relevant part: "The
Secretary shall, within 100 days after the filing of the
complaint . . . determine based on the facts whether
reasonable cause exists to believe that a discriminatory
housing practice has occurred or is about to occur,
unless it is impracticable to do so . . . . If the Secre-
tary is unable to make the determination within 100
days after the filing of the complaint . . . the Secretary
shall notify the complainant and respondent in writing
of the reasons for not doing so." As is immediately
apparent, the 100 day time period in § 46a-64c (f) mir-

---

[10] Then Attorney General Clarine Nardi Riddle testified before the judiciary
committee in support of the bill underlying P.A. 90-246 that, "[i]n 1988
Congress passed federal fair housing amendments which mandate that states
must have fair housing laws that are substantially equivalent to the federal
fair housing laws as specified by the regulations of the Department of
Housing and Urban Development. Failure to obtain this equivalency will
result in the loss of federal reimbursement funding. This [bill] accomplishes
the requirements through technical and substantive amendments to our
current laws to make it conform with the federal law." Conn. Joint Standing
Committee Hearings, Judiciary, Pt. 3, 1990 Sess., pp. 1000–1001.

rors the federal provisions, sharing the same "unless it is impracticable to do so" language.

In construing a Connecticut statute that is similar to federal law, we often turn to decisions construing the federal law for guidance. *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 73 n.6, 856 A.2d 364 (2004) ("[i]n construing a Connecticut statute that is similar to federal law, we are guided by federal case law"). We previously have applied this principle in the context of discrimination claims. See, e.g., *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996) ("we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes"). Indeed, when the overlap between state and federal law is deliberate, as in this case, federal decisions are particularly persuasive. *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 108, 653 A.2d 782 (1995).[11]

A review of federal case law on the question of the jurisdictional nature of 42 U.S.C. § 3610 (a) (1) (B) (iv) and (C) and (g) (1) overwhelmingly supports the conclusion that the 100 day time limit is not jurisdictional. In *United States* v. *Salvation Army*, United States District Court, Docket No. 96CV2415, 1997 U.S. Dist. LEXIS 882 (S.D.N.Y. January 30, 1997), the court held that the failure of the federal Department of Housing and Urban

---

[11] This court also has recognized, however, that "under certain circumstances, federal law defines 'the beginning and not the end of our approach to the subject.' " *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 470, 559 A.2d 1120 (1989), quoting *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 34–35 n.5, 357 A.2d 498 (1975). Consequently, on occasion, we have interpreted our statutes even more broadly than their federal counterparts, to provide *greater* protections to our citizens, especially in the area of civil rights. The defendants' proposed interpretation, which would result in the dismissal of discrimination complaints, leads to the opposite result and thus does not support diverting from the federal courts' construction of the statute.

Development (department) to notify a housing owner that the department was unable to complete its investigation within 100 days did not require the dismissal of the discrimination complaint. The facts of that case reflect that the department had not made a determination more than three years after the filing of the complaint, and it had not notified the property owner that it would be unable to complete the investigation within 100 days. Id., 3. The court reasoned: "In interpreting similar statutory language under the Comprehensive Employment and Training Act [29 U.S.C. § 801 et seq.], the [United States Court of Appeals for the] Second Circuit held that a statutory time period is not mandatory unless it both expressly requires an agency . . . to act within a particular time period and specifies a consequence for failure to comply with the provision. *St. Regis Mohawk Tribe, New York* v. *Brock,* 769 F.2d 37, 41–42 (2d Cir. 1985) (citing cases) [cert. denied, 476 U.S. 1140, 106 S. Ct. 2245, 90 L. Ed. 2d 692 (1986)]. When Congress does not specify a penalty for failure to meet a specific deadline, this Court declines to create one by dismissing the complaint. Such a result penalizes the private citizen who is not responsible for the Government's failure to meet the deadline. See *Brock* v. *Pierce County,* 476 U.S. 253, 261–62, 106 S. Ct. 1834, [90 L. Ed. 2d 248] (1986)." (Internal quotation marks omitted.) *United States* v. *Salvation Army,* supra, 3–4. Thereafter, the District Court concluded that, although it was not required to dismiss the complaint for lack of compliance with the statute on jurisdictional grounds, it nevertheless could dismiss the complaint based on the defense of laches. Id., 5–7 (concluding that limited admission of certain evidence was more appropriate remedy for government's delay than dismissal).

Several other federal courts similarly have determined that the time frames contained in 42 U.S.C. § 3610 do not serve as a jurisdictional bar. See *United States*

v. *Sea Winds of Marco, Inc.*, 893 F. Sup. 1051, 1055 (M.D. Fla. 1995) (procedural violations under 42 U.S.C. § 3610 do not raise jurisdictional issues); *United States v. Nally*, 867 F. Sup. 1446, 1451–52 (N.D. Cal. 1994) (concluding that impracticability exception contained in 42 U.S.C. § 3610 evidences Congress' anticipation that there would be times where 100 day deadline could not be met and thus deadline is not mandatory); *United States v. Gorman Towers Apartments*, 857 F. Sup. 1335, 1340 (W.D. Ark. 1994) (holding that 100 day time limit does not operate as jurisdictional bar); *United States v. Beethoven Associates Ltd. Partnership*, 843 F. Sup. 1257, 1264 (N.D. Ill. 1994) (100 day period is neither jurisdictional bar nor statute of limitations); *United States v. Curlee*, 792 F. Sup. 699, 700 (C.D. Cal. 1992) (100 day period not mandatory and does not raise jurisdictional issue). Most telling is the District Court's observation in *United States v. Beethoven Associates Ltd. Partnership*, supra, 1262, that "[i]f the 100-day limit is construed as a jurisdictional provision, the effect of that construction will be to bar those with potentially valid claims from recovery because of [the department's] delays. Such a result is patently inconsistent with the intent of the Fair Housing Act."

Therefore, the federal courts have concluded that the 100 day period cannot be jurisdictional because 42 U.S.C. § 3610 (g) "contains the 'impracticability' qualification and fails to specify the consequences of [the department's] noncompliance . . . ."[12] *United States v. Scott*, 788 F. Sup. 1555, 1559 (D. Kan. 1992); accord *Kelly v. Secretary, United States Dept. of Housing & Urban Development*, 3 F.3d 951, 956 (6th Cir. 1993); *United States v. Taigen & Sons, Inc.*, 303 F. Sup. 2d

---

[12] Although the defendants argue that the inclusion of the terms "final," "within," "shall" and "disposition" in § 46a-64c provides a strong indication of the legislature's intent to impose jurisdictional requirements, we note that those same terms are all derived from the federal statute.

1129, 1147 (D. Idaho 2003); *United States* v. *Forest Dale, Inc.*, 818 F. Sup. 954, 966 (N.D. Tex. 1993). While not enamored with the delay experienced by complainants, courts agree with the sentiment expressed in *United States* v. *Nally*, supra, 867 F. Sup. 1451–52, that "the purpose and policy behind the Fair Housing Act is to vindicate the civil rights of complainants who are subject to housing discrimination. . . . In 1988, Congress enacted the 100-day provisions to hasten, not foreclose, complainants' access to a forum. . . . If the courts were to construe the 100-day limit as a jurisdictional requirement, many potential claimants would be deprived of recovery under the [Fair Housing] Act solely because of [the department's] delays. . . . Such a result would be inconsistent with [that act's] purpose, especially in consideration of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided."[13] (Citations omitted; internal quotation marks omitted.)

Although we are not bound to follow the federal courts' construction of the federal counterpart to our statute, we find the courts' reasoning persuasive. Indeed, if we were to adopt the defendants' view, meritorious discrimination claims could be barred even when circumstances beyond the control of the commission or the complainant preclude adherence to the statutory deadlines. In our view, there is no evidence that the legislature intended for the time limitation to serve as a jurisdictional bar. Therefore, we conclude that the trial court improperly granted the defendants' motions to dismiss for lack of jurisdiction.

---

[13] Thus, we disagree with the defendants' claim that, because our legislature imposed a deadline to ensure speedy resolution of discrimination claims, it decided to do so even at the cost of the dismissal of untimely resolved, but meritorious, claims when the commission has given notice to the parties of the impracticability of its adherence to the deadlines.

## II

As an alternate ground for affirmance, the defendants claim that the commission, by notifying the defendants 568 days after the complaint had been filed of its inability to complete its investigation, violated their rights to due process.[14] The commission raises a number of procedural defects that it contends should bar our review of this claim.[15] The commission also contends that we should not consider this claim because the defendants presented no evidence at trial on the issue of prejudice. Although we do not countenance the delay that occurred in the present case, we agree that the defendants have failed to establish prejudice.

In the present case, the delay apparently stemmed, in whole or in part, from a dispute as to whether the defendants were required to produce, in the absence of a subpoena, certain documents the commission requested pursuant to its investigation of Wright-Khan's complaint. The commission never indicated to the defendants that their failure to produce the document would delay its investigation. Indeed, the defendants contend that the commission indicated that it would decide the case on the evidence before it if the documents were not produced.

Other than the passage of time itself, however, the defendants failed to present to the trial court *any* factual basis to support its position that they in fact had been prejudiced by the delay. On the contrary, the defendants asserted in their memorandum of law in

[14] The period cited by the defendants reflects the lapse of time following Wright-Kahn's filing of her original complaint. The commission's notice was issued approximately seven months after she filed her amended complaint.

[15] The commission contends, inter alia, that the defendants' violation of Practice Book § 63-4 (a) (1) (A) by failing to file a statement of alternate grounds upon which the judgment can be affirmed and their failure to seek an articulation from the trial court regarding its due process claim deprives the defendants of the ability to raise this issue on appeal.

support of the motions to dismiss that no evidence was necessary, and they made no further attempt to show any prejudice to them as a result of the time delay.[16] Thus, even if we were to overlook the defendants' procedural defects in raising this claim; see footnote 15 of this opinion; in the absence of any showing of harm at trial, this court reasonably cannot evaluate the defendants' due process claim. See *United States* v. *Forest Dale, Inc.*, supra, 818 F. Sup. 966 (examining facts of case and concluding that respondents failed to prove prejudice despite department's failure to issue discrimination charge until 582 days after complainant filed first complaint). "Due process is inherently fact-bound because due process is flexible and calls for such procedural protections as the particular situation demands. . . . The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum." (Internal quotation marks omitted.) *Thalheim* v. *Greenwich*, 256 Conn. 628, 648, 775 A.2d 947 (2001); see also *Williams* v. *Bartlett*, 189 Conn. 471, 476, 457 A.2d 290 (noting that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" [internal quotation marks omitted]), appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983).

We note, however, that our decision should not be construed by the commission to countenance such an extensive delay beyond the statutorily prescribed deadlines absent extraordinary circumstances, which clearly did not arise in the present case. Indeed, even if we

---

[16] The defendants asserted in their memorandum of law in support of their motions to dismiss that, had the commission issued a subpoena to compel them to produce the documents, they could have filed a motion to quash, which in turn would have given both the defendants and the commission an opportunity to weigh the delay in contesting or seeking the documents against the value of the documents. Although we agree with the underlying argument, this contention does not evidence prejudice resulting from the delay as would, for example, an inability to produce witnesses.

were to assume that the defendants' failure to produce the documents delayed the investigation, we can glean no explanation in the record for the commission's failure to provide timely notice to both parties that this failure could result in such a delay nor for the commission's delay in proceeding once it should have become clear that the defendants did not intend to produce the documents in the absence of a subpoena. Delays of this magnitude are contrary to the interests of both complainants and respondents and contravenes the commission's mandate to ensure prompt resolution of discrimination complaints. See *Kelly* v. *Secretary, United States Dept. of Housing & Urban Development,* supra, 3 F.3d 957 (Stating in the context of delayed processing of housing complaints that "the principal purpose of both the [Fair Housing Act and the Fair Housing Amendments Act] is to vindicate the rights of persons who suffer discrimination in housing. Nevertheless, those against whom complaints are made are entitled to fair treatment as well."). We caution the commission that our conclusion that the defendants failed to establish a due process violation in the present case does not mean that we will not recognize one in an appropriate case in the future. See, e.g., *Equal Employment Opportunity Commission* v. *Westinghouse Electric Corp.,* 592 F.2d 484, 485–87 (8th Cir. 1979) (reversing in part and affirming in part trial court's summary judgment rendered in favor of respondent due to Equal Employment Opportunities Commission's delay in bringing Title VII action for racial discrimination); see also *Baumgardner* v. *Secretary, United States Dept. of Housing & Urban Development,* 960 F.2d 572, 579 (6th Cir. 1992) (recognizing due process claim in context of defendant department's delays in carrying out statutory procedures and concluding that while there was no denial of due process, "deficiencies [had] adverse effect with regard to ascertaining fair and reasonable damages").

The judgment is reversed and the case is remanded with direction to deny the defendants' motions to dismiss and for further proceedings according to law.

In this opinion the other justices concurred.