******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES *v.* ECHO
HOSE AMBULANCE ET AL.
(AC 36493)

DiPentima, C. J., and Sheldon and Sullivan, Js.

*Argued December 1, 2014—officially released March 31, 2015*

(Appeal from Superior Court, judicial district of New
Britain, Cohn, J.)

*Russell J. Sweeting*, with whom, on the brief, was
*Thomas W. Moyher*, for the appellant (defendant
Sarah Puryear).

*Ian Angus Cole*, for the appellee (named defendant).

*Cindy A. Miller*, with whom was *Michael J. Rose*,
for the appellee (defendant city of Shelton).

*Opinion*

DiPENTIMA, C. J. In this appeal, we are presented with an issue not previously addressed by either this court or our Supreme Court: whether, in defining the term "employee" for purposes of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq., Connecticut should adopt the remuneration test applied by the United States Court of Appeals for the Second Circuit when defining that term in Title VII cases.

This appeal arises out of a complaint filed by the defendant Sarah Puryear with the plaintiff, the Commission on Human Rights and Opportunities (commission), alleging that the defendants, Echo Hose Ambulance (Echo Hose)[1] and the city of Shelton (city), had illegally discriminated and retaliated against her, an African-American female, because of her race and color in violation of General Statutes § 46a-60 (a) (1) and (4), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.[2] At the administrative hearing before the presiding human rights referee (referee), Puryear's complaint was dismissed after the city filed and prevailed on a motion to strike.[3] Following the dismissal, the commission appealed to the Superior Court in support of Puryear's position, and the court dismissed the appeal, affirming the referee's ruling dismissing the complaint. Thereafter, Puryear brought this appeal.

On appeal, Puryear claims that the court (1) erroneously applied the federal Title VII standard to define the term "employee" under CFEPA; and (2) erroneously upheld the granting of the motion to strike without affording her an opportunity to engage in further discovery or an evidentiary hearing. We affirm the judgment of the trial court.

The following procedural history and facts, as alleged in the complaint, are relevant to our consideration of Puryear's claim. On June 9, 2011, Puryear filed a complaint with the commission.[4] The complaint alleged that Echo Hose provided "ambulance transport, emergency first responder services, community CPR [cardiopulmonary resuscitation] training and public education for [the city]." According to the complaint, Puryear "interviewed with [Echo Hose] on October 10, 2009, and was accepted into the precepting program."[5] During her time at Echo Hose, Puryear, an African-American female, "was subject to verbal harassment and an abusive working environment on a continuing basis . . . ." In particular, Puryear "was treated differently due to her race and color, and she was subject to discipline that other individuals . . . were not. In addition, she was subject to inappropriate comments about the 'ghetto' and Africa." On December 10, 2009, Puryear was "suspended from the program because she did [not] give

notice that she would be absent from" a meeting. On December 11, 2009, Puryear was notified by the management that she could "no longer ride with the Saturday crew and that her shift [was] being changed" despite a prior agreement that she would be able to "ride with the Saturday crew because she [was] in school on weekdays." On June 17, 2010, Puryear was accused of "not complying with the 'chain of command' and [was] terminated" from the precepting program. On June 18, 2010, however, her termination "from the program was revoked" and she was reinstated. On September 2, 2010, Puryear was "cleared from the precepting program and became a full member of [Echo Hose]." On November 12, 2010, Puryear was accused of "abandoning her crew and patient and [was] reprimanded" by her supervisor. "On December 14, 2010, John DiaGiacomo, secretary of the executive board at [Echo Hose], informed Puryear that she was voted out of [Echo Hose] at a membership meeting . . . ." "On or about December 15, 2010, [Joe] Laucella [assistant chief of Echo Hose] informed Puryear . . . that there was no procedure to appeal the decision."

Thereafter, Puryear filed a complaint with the commission. After an administrative review, the complaint was certified for a public hearing. On October 4, 2012, the city filed a motion to strike the complaint on the ground that Puryear could not bring a claim of employment discrimination under CFEPA or Title VII because she was not an employee of Echo Hose or of the city.[6] On January 10, 2013, the referee granted the motion to strike. The referee concluded that Puryear had failed to "allege sufficient facts to support the existence of an employment relationship between the parties" because she did not assert that she had received any direct or indirect remuneration for her services at Echo Hose. In making that determination, the referee applied the federal "remuneration" test, which considers whether a purported employee received sufficient direct or indirect remuneration for his or her services to support the existence of the employer-employee relationship. On March 23, 2013, the commission appealed to the Superior Court from the granting of the motion to strike.[7] On December 23, 2013, the court affirmed the referee's granting of the motion to strike and dismissed the appeal. This appeal followed. Additional details will be set forth as necessary.

Our review of the trial court's dismissal of an administrative appeal is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. "Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse if its discretion. . . . [Thus] [c]onclusions of law

reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citation omitted; internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 281–82, 77 A.3d 121 (2013). In the present case, the issue before this court requires us to construe the term "employee" under CFEPA. "Consequently, because the commission's interpretation has not been subjected to judicial scrutiny or consistently applied by the agency over a long period of time, our review is de novo." (Internal quotation marks omitted.) Id., 282–83.

## I

Puryear's primary claim is that the court erroneously applied the federal "remuneration" test to determine whether she was an employee of Echo Hose under the CFEPA. Acknowledging that there is no Connecticut appellate case law on this issue, Puryear argues that the court was not bound by the federal interpretation of the term and that instead it should have applied the common-law "right of control" test, as applied by the Connecticut courts. We are not persuaded.

We first note that a question of whether an individual is an "employee" under CFEPA raises an issue of statutory interpretation, over which we have plenary review. *Miller* v. *Egan*, 265 Conn. 301, 327, 828 A.2d 549 (2003). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is suscepti-

ble to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 399, 999 A.2d 682 (2010). "Only if we determine that the text of the statute is not plain and unambiguous may we look to extratextual evidence of its meaning, such as the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement . . . ." (Internal quotation marks omitted.) *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 631–32, 6 A.3d 60 (2010). In addition, we may also turn for interpretive guidance to "legislation in other states and jurisdictions which pertains to the same subject matter, persons, things, or relations . . . ." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 196, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008).

Puryear does not dispute that in order to invoke the protections of § 46a-60 (a) (1) and (4), she had to make factual allegations sufficient to establish that she was an employee of Echo Hose. See *McWeeny* v. *Hartford*, 287 Conn. 56, 70, 946 A.2d 862 (2008) (stating that plain language of § 46a-60 [a] [1] limits its protections to former, current, or prospective employees); *Hebrew Home & Hospital, Inc.* v. *Brewer*, 92 Conn. App. 762, 770, 886 A.2d 1248 (2005) ("[t]o establish a prima facie case of retaliation [under § 46a-60 (a) (4)], an *employee* must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action" [emphasis added; internal quotation marks omitted]). CFEPA, however, defines an "employee" simply as any person employed by an employer. See General Statutes § 46a-51 (9). Such a definition suffices for situations of traditional employment, where an employee receives monetary compensation for his or her services. It is less helpful, however, in cases where the compensation allegedly provided by the purported employer is not monetary, but takes the form of other benefits. See, e.g., *Clackamas Gastroenterology Associates, P. C.* v. *Wells*, 538 U.S. 440, 444, 123 S. Ct. 1673, 155 L. Ed. 2d 615 (2003) (concluding that definition of employee as "an individual employed by an employer . . . qualifies as a mere nominal definition that is completely circular and explains nothing" [citation omitted; internal quotation marks omitted]). Accordingly, we conclude that the term "employee" as used in the statute is not plain and unambiguous, and thus we must turn to extratextual sources for guidance in construing it.

## A

### Common-Law "Right of Control" Test

In her brief, Puryear argues that a determination of whether someone is an employee for the purpose of

CFEPA should be made applying the common-law "agency" or "right of control" test. We are not persuaded.

The common-law "agency" or "right of control" test is generally applied by the Connecticut courts to distinguish between employees and independent contractors. Under that test, "[o]ne is an employee of another when he [or she] renders a service for the other and when what he [or she] agrees to do, or is directed to do, is subject to the will of the other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. . . . The controlling consideration in the determination whether the relationship of master and servant exists or that of independent contractor exists is: Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work?" (Emphasis omitted; internal quotation marks omitted.) *Compassionate Care, Inc.* v. *Travelers Indemnity Co.*, 147 Conn. App. 380, 391, 83 A.3d 647 (2013).

In this case, the court upheld the referee's decision to decline to apply the common-law test, stating that the "control [test] loses some of its significance in the determination of whether an individual is an employee in those situations in which compensation is not evident," and because its application fails to answer the antecedent question "of whether the person was hired for any purpose at all." We agree with the court's rationale and conclude that the common-law test alone is insufficient in determining whether an individual is in fact an employee under CFEPA. See *O'Connor* v. *Davis*, 126 F.3d 112, 115 (2d Cir. 1997) ("[A] prerequisite to considering whether an individual is [an employee or an independent contractor] under common-law agency principles is that the individual [has] been hired in the first instance. That is, only where a 'hire' has occurred should the common-law agency analysis be undertaken."), cert. denied, 522 U.S. 1114, 118 S. Ct. 1048, 140 L. Ed. 2d 112 (1998).

B

Remuneration Test

Having concluded that the common-law "right of control" test alone does not answer the question of whether an individual is an employee for the purposes of CFEPA, we now must determine whether the court's application of the Second Circuit's remuneration test was appropriate in this case.

We first note that, "[i]n interpreting our antidiscrimination and antiretaliation statutes, we look to federal law for guidance. In drafting and modifying [CFEPA] . . . our legislature modeled that act on its federal counterpart, Title VII . . . and it has sought to keep our state law consistent with federal law in this area.

. . . Accordingly, in matters involving the interpretation of the scope of our antidiscrimination statutes, our courts consistently have looked to federal precedent for guidance." (Citation omitted; internal quotation marks omitted.) *Eagen* v. *Commission on Human Rights & Opportunities*, 135 Conn. App. 563, 579–80, 42 A.3d 478 (2012); *Callender* v. *Reflexite Corp.*, 143 Conn. App. 351, 375 n.8, 70 A.3d 1084 (2013) ("[w]e are mindful that 'Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws' "). Furthermore, our Supreme Court has held that in "defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60." *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998); see also *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008) ("[a]lthough this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes"); *Commission on Human Rights & Opportunities* v. *Savin Rock Condominium Assn., Inc.*, 273 Conn. 373, 386, 870 A.2d 457 (2005) ("[i]n construing a Connecticut statute that is similar to federal law, we often turn to decisions construing the federal law for guidance"); *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996) (same); *Miko* v. *Commission on Human Rights & Opportunities*, 220 Conn. 192, 202, 596 A.2d 396 (1991) (adopting federal employment discrimination evidentiary standards in claims of overt discrimination pursuant to General Statutes (Rev. to 1987) § 46a-64a). We thus conclude, as did the trial court, that federal law interpreting Title VII is an appropriate source of guidance in this case.

Similar to CFEPA, Title VII defines an employee as an individual employed by an employer. 42 U.S.C. § 2000e (f) (2012). Faced with the apparent ambiguity in that language, several federal circuit courts of appeal have adopted a "remuneration" test as a threshold requirement for determining whether an individual is an employee.[8] To satisfy that test, the Second Circuit requires a putative "employee" to establish that he or she "has received direct or indirect remuneration from the alleged employer."[9] (Internal quotation marks omitted.) *Pietras* v. *Board of Fire Commissioners of Farmingville Fire District*, 180 F.3d 468, 473 (2d Cir. 1999). In *Pietras*, the court explained that "an employment relationship within the scope of Title VII can exist even when the putative employee receives no salary so long as he or she gets numerous job-related benefits" such as health insurance, vacation, sick pay, a disability pension, survivors' benefits, group life insurance, scholarships for dependents upon death, or other "indirect but

significant remuneration." (Internal quotation marks omitted.) Id.; see also *O'Connor* v. *Davis*, supra, 126 F.3d 116 (identifying vacation, sick pay, health insurance *or promise thereof* as forms of remuneration indicative of employment relationship). Moreover, "[i]n the absence of a clear contractual employer-employee relationship, a party claiming to be an employee under Title VII must come forward with substantial benefits not merely incidental to the activity performed in order to satisfy this Circuit's remuneration test." *York* v. *Assn. of Bar of City of New York*, 286 F.3d 122, 126 (2d Cir.) (finding that benefits in form of clerical support, limited tax deductions, and networking opportunities are not sufficient to meet "remuneration" test requirements), cert. denied, 537 U.S. 1089, 123 S. Ct. 702, 154 L. Ed. 2d 633 (2002); see also *Juino* v. *Livingston Parish Fire District No. 5*, 717 F.3d 431, 439–40 (5th Cir. 2013) (concluding that plaintiff, volunteer firefighter, who received benefits consisting of $2 per fire/emergency call; life insurance policy; full firefighter's uniform and badge; firefighting and emergency response gear; and firefighting and emergency first response training, did not meet "remuneration" test). As we have noted in part I A of this opinion, only if the remuneration test is satisfied would the court apply the common-law "agency" or "right of control" test. See *O'Connor* v. *Davis*, supra, 115.

In this case, referencing *Pietras*, *O'Connor*, and *York*, the court agreed with the referee that Puryear's factual allegations were "too weak to establish an employment relationship." We agree and conclude that the court properly applied the "remuneration" test, as interpreted and applied by the Second Circuit to Title VII claims, to affirm the referee's granting of the motion to strike. As we have stated previously, Connecticut case law clearly establishes that our courts may look to federal precedent for guidance in enforcing our antidiscrimination statutes. Having reviewed the complaint, we conclude that the court properly determined that it failed to provide sufficient allegations that Puryear was an employee of Echo Hose, as it does not state that she was an employee nor does it allege that she received any substantial benefits in her capacity as a member of Echo Hose. Simply stated, in order to survive a motion to strike, Puryear's complaint had to allege that she either was paid for her services or, in the alternative, that she received indirect remuneration for these services in the form of substantial benefits that were not simply incidental to her job description, such as, for example, health insurance, vacation time, sick pay, life insurance, or retirement benefits. Because the complaint did not so allege, we agree with the trial court that the referee correctly ordered that it be stricken for failure to state a claim upon which relief may be granted.

II

We next briefly address Puryear's claim that the court erroneously upheld the granting of the city's motion to strike without affording her an opportunity to engage in further discovery or an evidentiary hearing.[10] We disagree.

During oral argument before this court, Puryear conceded that she is unable to satisfy the "remuneration" test used by the federal courts in Title VII cases. In light of this concession and our conclusion that the application of the "remuneration" test to this case was proper, Puryear could not have benefited from additional discovery or an evidentiary hearing on the issue.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that the defendant has been identified as both Echo Hose Ambulance and Echo Hose Ambulance Corps. throughout the pleadings. We retain the name of the party in the case caption as identified in the original pleading.

[2] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice . . . (1) [f]or an employer . . . except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual . . . because of the individual's race, color . . . ."

General Statutes § 46a-60 (a) (4) makes it illegal for an employer "to discharge, expel or otherwise discriminate against any person because such person . . . has filed a complaint . . . ."

The relevant provision of Title VII makes it an "unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color . . . ." 42 U.S.C. § 2000e-2 (a) (2012).

[3] The motion to strike was filed by the city. The record is silent as to whether Echo Hose has joined it. Nevertheless, both defendants filed briefs in this appeal, and its disposition absolves both defendants of liability.

[4] Initially, the complaint was filed by Brenda Puryear on behalf of her minor daughter, Sarah. Once Sarah Puryear had reached the age of majority, the court granted a motion to substitute her as a defendant.

[5] There is nothing in the record explaining the term "precepting." The Merriam-Webster dictionary does not contain the term "precepting," but defines a preceptor as a teacher or tutor. See Merriam-Webster's Collegiate Dictionary (11th Ed. 2003).

[6] The motion to strike was filed under § 46a-54-88a (d) of the Regulations of Connecticut State Agencies, which provides, inter alia, that a "presiding officer may, on his or her own or upon motion by a party, dismiss a complaint or a portion thereof if the complainant or the commission . . . (2) Fails to state a claim for which relief can be granted . . . ."

[7] We note that under the state regulations, the granting of a motion to strike is a final decision. See Regs., Conn. State Agencies § 46a-54-88a; see also General Statutes § 4-180 (c).

[8] See *Juino* v. *Livingston Parish Fire District No. 5*, 717 F.3d 431, 435 (5th Cir. 2013) (adopting remuneration test as threshold requirement along with Second, Fourth, Eighth, Tenth, and Eleventh Circuits); but see *Marie* v. *American Red Cross*, 771 F.3d 344, 353 (6th Cir. 2014) ("in this circuit, remuneration is not an independent antecedent requirement, but rather it is a nondispositive factor that should be assessed in conjunction with the other . . . factors).

[9] We rely on the Second Circuit's interpretation of the term "employee" in Title VII cases because "it is well settled that decisions of the Second Circuit, while not binding upon this court, nevertheless carry particularly persuasive weight in the resolution of issues of federal law when the United States Supreme Court has not spoken on the point." (Internal quotation marks omitted.) *Dayner* v. *Archdiocese of Hartford*, 301 Conn. 759, 783, 23 A.3d 1192 (2011).

[10] Additionally, Puryear argues that the court abused its discretion in upholding the referee's granting of the motion to strike because when "a state agency's determination of a question of law has not previously been

subject to judicial scrutiny," the agency's interpretation is "not entitled to special deference." We disagree. Our review of the record reveals that the court did not afford special deference to the referee's interpretation of the term "employee" under CFEPA. In its memorandum of decision, the court, quoting from *Blinkoff* v. *Commission on Human Rights & Opportunities*, 129 Conn. App. 714, 2 A.3d 1272, cert. denied, 302 Conn. 922, 28 A.3d 341 (2011), correctly stated that "[c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) Id., 721. The court agreed with the referee only after it concluded its own independent analysis of the issue and determined that the referee's conclusions were sound.